VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF CHESTERFIELD

| | | |
|---|---|---|
| FRANCES J. BELISLE and | ) | |
| PIERRE BELISLE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| | ) | |
| ANGELA BAXTER | ) | |
| MICHAEL WHITTINGTON | ) | |
| LAWRENCE COSTELLO | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| DONALD R. KYLES | ) | |
| | ) | |
| Defendants. | ) | |

# __COMPLAINT__

Plaintiffs, Frances J. Belisle and Pierre Belisle, by counsel, file the following Complaint against defendants, Angela Baxter ("Baxter"), Michael Whittington ("Whittington"), Lawrence Costello ("Costello") and Donald R. Kyles ("Kyles"), jointly and severally.

Plaintiffs seek (a) compensatory damages and punitive damages in an amount not less than **$3,000,000.00**, (b) prejudgment interest on the Principal Sum awarded by the Jury from March 25, 2017 until the date Judgment is entered pursuant to § 8.01-382 of the Virginia Code (1905), as amended, (c) attorney's fees pursuant to 42 U.S.C. § 1988 and the rule of law in *Burruss v. Hines*, and (d) costs incurred – arising out of defendants' malicious prosecution, defamation *per se* and insulting words.

1

EXHIBIT
__A__

## I.  **INTRODUCTION**

1.    This case arises out of criminal charges falsely and maliciously instigated against Plaintiffs by the defendants.

2.    In this Complaint, Plaintiffs make eight (8) claims against the defendants for which Plaintiffs seek money damages:

a.    <u>Count I</u> – First, Plaintiff, Frances J. Belisle ("Fran"), brings an action for "malicious prosecution" pursuant to Title 42 U.S.C. § 1983.  More specifically, Fran alleges (a) that Baxter, acting under color of State law in combination with Whittington, unreasonably seized her person, restrained her freedom of movement and deprived Fran of her liberty and/or property without due process of law, (b) that the deprivation was accomplished through legal process that was not supported by probable cause, and (c) that the criminal proceeding terminated in Fran's favor.  Count I is based on 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. *See, e.g., Burrell v. Virginia,* 395 F .3d 508, 514 (4th Cir. 2005), and *Brooks v. City of Winston-Salem,* 85 F.3d 178, 183-84 (4th Cir. 1996).  In Count I, Fran seeks compensatory damages and punitive damages, as well as attorney's fees as authorized by 42 U.S.C. § 1988.

b.    <u>Count II</u> – Second, Fran states a claim under Virginia law for malicious prosecution.   More specifically, Fran alleges (a) that Baxter, acting in combination with Whittington, instituted a prosecution against Fran, (b) that the prosecution was terminated in a manner not unfavorable to Fran, (c) that the prosecution was instituted without probable cause, and (d) that the defendants acted with malice, out of a controlling motive other than a good faith desire to further the ends of justice,

enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished. *Stanley v. Webber*, 260 Va. 90, 95-96, 531 S.E.2d 311 (2000); *Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 684, 152 S.E.2d 271 (1967) (malice may be inferred from the lack of probable cause). Under this Count, Fran seeks compensatory damages and punitive damages, as well as attorney's fees pursuant to the rule of law announced by the Virginia Supreme Court in *Burruss v. Hines*, 94 Va. 413, 26 S.E. 875, 878 (1897) ("The general rule is that counsel fees are not recoverable as damages; but on the trial of an action for malicious prosecution or false imprisonment, where exemplary damages are recoverable, the fees paid or incurred to counsel for defending the original suit or proceeding may be proved, and, if reasonable and necessarily incurred, may be taken into consideration by the jury in the assessment of damages.").

c.      Count III – Third, Fran states a claim under Virginia law for false imprisonment. More specifically, Fran alleges (a) that Baxter, acting in combination with Whittington, (b) arrested Fran and restrained her physical liberty, (c) unlawfully and without adequate legal justification. *Jordan v. Shands*, 255 Va. 492, 497, 500 S.E.2d 215 (1989) (the tort of false imprisonment is defined as "the direct restraint by one person of the physical liberty of another without adequate legal justification") (quoting *W.T. Grant Co. v. Owens*, 149 Va. 906, 921, 141 S.E. 860 (1928)); *Zayre of Virginia v. Gowdy*, 207 Va. 47, 50-51, 147 S.E.2d 710 (1966) (to maintain an action for false imprisonment, it is not necessary to show malice, ill will or the slightest wrongful intention, and the good faith of a defendant will not defeat a plaintiff's right to recover); *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 489-490, 50 S.E.2d 387 (1948) ("In an action for false imprisonment, as distinguished from an action for malicious prosecution, the good faith

3

of the defendant in causing the arrest, or probable cause, therefore, is no defense to a claim for actual or compensatory damages sustained in the consequence thereof.") (citations omitted); *Sands v. Norvell*, 126 Va. 384, 101 S.E. 569 (1919) ("This is not an action for malicious prosecution, but for false imprisonment, and in such a case want of probable cause is not essential to the right of recovery"). Under this Count, Fran seeks compensatory damages and punitive damages, as well as attorney's fees pursuant to the rule of law announced by the Virginia Supreme Court in *Burruss v. Hines*.

        d.    <u>Count IV</u> – Fourth, Fran states a claim under Virginia law for defamation. More specifically, Fran alleges that the defendants (a) published, (b) false and defamatory statements of and concerning Fran, (c) with the requisite intent. Under this Count, Fran seeks compensatory damages and punitive damages. *Harrell v. Colonial Holdings, Inc.*, 2013 WL 550424, at * 7 (E.D. Va. 2013) ("Allegations of 'illegal' conduct are … clearly actionable, because an accusation that a person's conduct is 'illegal' is objectively provable. Couching such an unequivocal statement as "legal opinion" does not change the analysis.").

        e.    <u>Count V</u> – Fifth, Fran states a claim under § 8.01-45 of the Virginia Code (1950), as amended, for insulting words. More specifically, Fran alleges that the defendants (a) made, stated or used, (b) insulting words of and concerning Fran, (c) that tend to violence and breach of the peace. Under this Count, Fran seeks compensatory damages and punitive damages. *Beasley v. Consolidation Col. Co.*, 2012 WL 2798805 (W.D. Va. 2012) ("The Supreme Court of Virginia has repeatedly noted that false accusations of a crime are 'insulting and [tend] to violence and breach of the peace'").

f.  Count VI – Sixth, Plaintiff, Pierre Belisle ("Pierre"), brings an action under Virginia law for malicious prosecution.  More specifically, Pierre allege (a) that Costello, upon Kyles' complaint and with Kyles' cooperation, instituted a prosecution against Pierre, (b) that the prosecution was terminated in a manner not unfavorable to Pierre, (c) that the prosecution was instituted without probable cause, and (d) that Costello and Kyles acted with malice.   Under this Count, Pierre seeks compensatory damages, punitive damages, and attorney's fees.

g.  Count VII – Seventh, Fran and Pierre state a claim under Virginia law for defamation.  More specifically, Fran and Pierre allege that Costello and Kyles (a) published, (b) false and defamatory statements of and concerning Pierre, (c) with the requisite intent.  Under this Count, Fran and Pierre seeks compensatory damages and punitive damages.

h.  Count VIII – Eighth, Pierre states a claim under § 8.01-45 of the Virginia Code (1950), as amended, for insulting words.  More specifically, Pierre alleges that Costello and Kyles (a) made, stated or used, (b) insulting words of and concerning Pierre, (c) that tend to violence and breach of the peace.   Under this Count, Pierre seeks compensatory damages and punitive damages.

## II.  PARTIES

3.  Fran lives in Chesterfield County, Virginia.  She has two young girls, ages 9 and 11.  She is 46 years-old, white, 4' 11" tall, 125 pounds.  Fran is an attorney.  She was an Officer in the United States Air Force for four (4) years, and a United States Diplomat for six (6) years.   She held a Top Secret – Sensitive Compartmented Information Security Clearance.  Fran honorably served her Country across the World, in

Japan, Algeria, Morocco, Western Sahara, Turkey and Canada.  She wrote the Algerian Human Rights Report for Congress; taught Constitutional Law, Diplomacy and Intelligence at Virginia Commonwealth University; and lectured on basic rules of Democracy around the World.  She is both an Author and a Public Speaker.  Fran earned her Bachelor's Degree from Boston University and her Juris Doctorate Degree from William and Mary College.  She is currently in the middle of a PhD program through the United Nations.  Fran is married to Plaintiff, Pierre Belisle ("Pierre").  Until she was falsely accused of a crime, arrested and defamed in March 2017, Fran enjoyed an outstanding and untarnished reputation.  Fran's reputation was integral to her business and profession.

4.       Pierre is a retired Police Officer who teaches French and Criminal Justice at Hopewell High School.  Pierre's brothers-in-law, sister and two nephews are police officers.  Pierre has substantial experience with crowd control.  He is a Commander of crisis situations, having assisted many large Sports and Entertainment organizations such as Major League Baseball, the National Hockey League, and the Canadian Football League.  After he retired from law enforcement, Pierre was hired by two major venues to manage their operations: the Montreal Bell Center (Home of the Montreal Canadiens) and the Prudential Center (Home of the New Jersey Devils).  Pierre has a Master's Degree in Public Administration with specialization in Police Management.  He was National Director for the Crime Stoppers Program in Canada, and was awarded the Police Distinguished Services Medal by the Lieutenant Governor of Canada.  He was Vice-President of the Criminal Justice Teachers Association in Quebec and Chief Instructor of the National Police Academy in Nicolet Quebec.  Pierre had Top Secret clearance in two

countries, Canada and United States.  Until he was falsely accused of a crime, arrested and defamed in September 2017, Pierre enjoyed a stellar and unblemished reputation. His reputation was integral to his job as a High School Teacher.

5.      Defendants, Baxter, Whittington and Costello, are citizens of Virginia who live, upon information and belief, in the City of Hopewell.  Baxter is Hispanic. Whittington and Costello are African-American.  At all times relevant to this action, Baxter, Whittington and Costello were employed as City of Hopewell police officers and, as such, acted under color of State law with respect to the matters alleged in this action. Whittington has a reputation for acting irrationally, unprofessionally and for taking out grudges on other officers.  At all times relevant to this case, Whittington was involved in an extra-marital affair with Baxter.

6.      Defendant, Kyles, is a citizen of Virginia.  At all times relevant to this action, Kyles was employed as a bus driver by the Hopewell City Public Schools.

### III.  JURISDICTION AND VENUE

7.      The Circuit Court for the County of Chesterfield has jurisdiction of this matter pursuant to § 17.1-513 of the Virginia Code (1950), as amended.

8.       Venue is proper in the Circuit Court for the County of Chesterfield pursuant to § 8.01-262(3-4) of the Virginia Code (1950), as amended.  Numerous fact witnesses and substantial evidence relevant to the claims stated in this action are located in Chesterfield County.  The cause of action arose, in part, in Chesterfield County, where the defendants published defamatory statements that caused harm to both Fran and Pierre.

## IV.  STATEMENT OF THE MATERIAL FACTS

**A.**  ***Fran***

9.     On Saturday, March 25, 2017, Hopewell City Public Schools ("HCPS") held its "We Are The World" event as part of its Fine Arts Festival.  The event took place at the Hopewell High School.   The finale featured a sneak peek performance (preproduction) of the upcoming spring musical, "Annie".

10.     Fran and Pierre's 9-year old daughter was in the musical.

11.     That morning, Fran took her minor daughter to Hopewell High School. Fran planned to personally escort her minor daughter to the specific High School classroom where the musical's director, Derome Smith, asked the children to meet.

12.     Fran did not want her 9-year old child to be alone in a High School open to the public and full of strangers.

13.     City of Hopewell police were asked by the HCPS School Board to work the event to ensure the safety and welfare of the attending public.

14.     When Fran arrived, she observed that the police had set up a barricade inside the High School to block access to the auditorium and to impede entry into the hallway where the classrooms were located.  The barricade consisted of tables with a narrow opening between them.

15.     The police randomly allowed some to enter the hallway through the barricade.  Others were stopped and denied entry.

16.     Although Fran was initially told that she could not accompany her 9-year old daughter down the hallway to the classroom, Fran was eventually told she could go through.

8

17.     Fran quietly escorted her daughter to the designated classroom and returned to the barricade.

18.     As Fran came back to the barricade, the little girl playing the main role of "Annie" in the preproduction and her mother also tried to access the drama classroom where all the kids were instructed to go.

19.     Baxter stopped little "Annie" and her mother.  Fran, who had been allowed to take her daughter to the classroom, told Baxter that 8 and 9-year-old children "can't be unsupervised and out of the line of sight of their parents.  It is both a safety and liability issue."  Fran opined that either parents be allowed to escort their children to a specific classroom or, in the alternative, that one of the many officers' present escort the children to their required location.  Baxter told Fran that no parents were allowed in the hallway and it was not her "job to escort children."

20.     When Fran countered that safety of the children was exactly Baxter's job and the main reason she was in the High School for this event was student safety, Baxter demanded that Fran leave the School or be arrested.

21.     Fran calmly demanded to know upon what grounds she was being evicted and, immediately upon asking that question, Baxter arrested Fran, with handcuffs, in front of a crowd of people, including Fran's minor 11-year old daughter.

22.     Before slapping handcuffs on Fran and physically restraining her, Baxter never informed Fran that she (Baxter) believed that Fran's conduct was unlawful.

23.     Fran was profoundly insulted, embarrassed, humiliated, shocked and dismayed by Baxter's actions.

24.     Fran was not intoxicated.   Fran never raised her voice.   She never threatened Baxter or anyone else.   Fran never approached Baxter or made any gestures towards her.   Fran did not incite Baxter or anyone else to violence.   Fran did nothing to disrupt the HCPS event and, indeed, the event was never disrupted.

25.     The whole exchange – from the initial contact with Baxter to the handcuffs and physical restraint – lasted less than one minute.

26.     The entire encounter between Fran and Baxter was captured on film by the High School's closed-circuit television system (CCTV).

27.     Fran asked several times what she was being arrested for.   Baxter refused to tell Fran until Fran identified herself as an attorney.   At that point, Baxter stated to Fran and publicly in front of many people that Fran was being arrested for "disorderly conduct in a public place".   Baxter refused to tell Fran what Fran had done that supposedly constituted "disorderly conduct".

28.     Section 18.2-415 of the Virginia Code (1950), as amended, provides that a person is "guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," she "[i]n any … public building, or while in or on a … public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed" or if she "[w]illfully … disrupts the operation of any school or any activity conducted or sponsored by any school, if the disruption (i) prevents or interferes with the orderly conduct of the operation or activity or (ii) has a direct tendency to cause acts of violence by the person or persons at whom, individually, the disruption is directed."

29.     A person violating § 18.2-415 "shall be guilty of a Class 1 misdemeanor."

10

30.     Baxter had no probable cause to arrest Fran for disorderly conduct in a public place.

31.     Baxter did not act in an objectively reasonable manner.  Any reasonable person would have known that, by arresting a person without cause to do so, they were violating the constitutional rights of that person.  Baxter violated clearly established statutory and constitutional rights of which any reasonable person would have known.

32.     Baxter exercised her power irresponsibly.   In truth, Fran's simple questions irritated Baxter and Baxter precipitously retaliated by arresting Fran and depriving her of her constitutional rights.  Baxter abused her authority and acted with reckless disregard for the truth, in doing so, she violated Fran's well-established constitutional rights.

33.     The incident was captured on videotape and on bodycams worn by Baxter and Baxter's fellow officers.  The videotapes demonstrate that there was no probable cause and that Baxter's conduct was objectively unreasonable.

34.     After the police placed the handcuffs on Fran's wrists, Fran did not resist. Rather, she simply went limp.  Instead of carrying Fran and supporting her back, Baxter and another officer, Michael Redavid ("Redavid"), dragged Fran outside like a common criminal while Fran cried out for Pierre.  Costello was also present.  After they dragged Fran outside, Baxter told Whittington that she was taking Fran to jail.  Whittington told Baxter to take Fran the principal's office.  Baxter said "no" and argued with Whittington for about a minute.  Finally, Whittington ordered Redavid to take Fran to the office.

35.     Because of the excessive force employed by Baxter, Redavid and Costello, Fran suffered bruises on her arms and wrists:



36.     When Fran started to film the incident with her cell phone, Baxter initially ordered Fran to stop until Fran again reminded Baxter that she (Fran) was an attorney and that she had the right to record the arrest.

37.     Fran was never given a Miranda warning.  She was kept in handcuffs for thirty (30) minutes, despite being in a secure location with five (5) police officers and in spite of the fact she was having a friendly conversation with a member of the HCPS Staff, Janice Butterworth.

38.     Most disturbing of all was the fact that Baxter and Whittington took Fran into custody without *ANY* consideration for the safety of Fran's other daughter (11-years old) who was there with Fran.  Baxter and Whittington did not care that Fran's 11-year old was left in a mass crowd to look for Pierre on her own, after watching her mother be handcuffed and dragged out of the School.  As Baxter and Whittington hauled Fran away, Fran was terrified as to what might happen to her daughter.

12

**B.** *Pierre*

39.     Pierre saw Baxter and other officers dragging Fran out of the building.  At the bottom of the steps near the High School auditorium, there was a small pause.  Pierre told Costello, whom he knew, to take the handcuffs off Fran and explain the situation.  At that point, a younger officer, about 5' 8", overweight, with dark brown hair, grabbed Pierre by the right arm with his left hand and asked Pierre in a menacing tone, "do you want to be arrested too".  Pierre told the officer to take his hand off and try to figure out what was going on.  An older officer intervened and de-escalated the situation, avoiding another embarrassing action by the Hopewell police.

40.     Pierre learned that Baxter and Whittington had taken Fran to the Main Office of the Hopewell High School.  At first, Pierre was kept outside in the lobby.  When he finally could get in the Main Office, he was able to see Fran in the Administration Office conference room, seated on a chair, still with handcuffs behind her back.  There were several officers in the room as well as two (2) HCPS officials, Butterworth and Dr. Tina Barringer ("Barringer"), Supervisor of Elementary Education.

41.     After almost twenty (20) minutes, Whittington waddled into the Main Office.  Pierre asked him why Fran was still hand-cuffed since the situation had been under control for a long time.  Whittington told Pierre that Fran was still handcuffed because she was "still under arrest".  Whittington then went into the conference with Fran.

42.     When Whittington emerged, he asked to see Pierre outside.  Whittington told Pierre with a smile that Fran was going to be released on a summons and that she and Pierre would be able to attend their 9-year old's pre-performance.  Pierre advised

13

Whittington to inform his Chief to save some money from the budget because Pierre was "going to sue your (meaning Hopewell PD) ass off".  At that point, Whittington became highly disrespectful, took a step back and nervously tried to activate his "bodycam", asking Pierre to wait a minute because he needed to record Pierre's "threat".  Pierre informed Whittington that telling someone that one is going to take legal action against him or the organization is not a threat.  Whittington and Pierre then went back inside the school building.

43.     Shortly thereafter, Whittington came out of the Administration conference room with Fran.  Baxter and Whittington continued to refused to disclose what was the "disorderly conduct" that Fran had displayed to justify her arrest.  Whittington told Fran that he did not have to tell her anything and that she would be informed in Court about these details.

**C.**     ***False Statements To The Press***

44.     On March 27, 2017, the Petersburg *Progress-Index* published an online article, entitled "**Hopewell parent handcuffed after incident at Fine Arts Festival**".

45.     Whittington made the following false and defamatory statements to the *Progress-Index* reporter:

> Hopewell Police Capt. Mike Whittington said that he understood that Belisle had "started getting disorderly with the officers" and yelling while they were engaged in closing off restricted areas. However, he noted that he had not personally witnessed the incident and that officers would have to review the body camera footage of the incident.

46.     Despite Keohane's representations, neither Baxter nor Whittington nor any other Hopewell police officer ever produced the exculpatory body camera video.

47.     On March 29, 2017, WTVR.com published an online article, entitled

"**Chesterfield mom arrested at school event says 'excessive force' used**".

48.     WTVR interviewed Hopewell police chief, John Keohane ("Keohane"),

for the story.

49.     Keohane republished false and defamatory statements of and concerning

Fran that he ("Keohane") had heard from Baxter and Whittington, including:

> "She [Fran] was very loud, very aggressive and belligerent to the officers.  They
> gave her several opportunities to leave the area and to calm down and that just
> didn't happen.  If she just listened to the Officers, the arrest would have never
> occurred".

50.     Kyles falsely stated to WTVR that on March 25, 2017 Fran was

"belligerent" and "used profanity".

**D.     _Fran and Pierre Filed Complaints of Police Misconduct_**

51.     On March 29, 2017, both Fran and Pierre filed complaints of police

misconduct with the Hopewell Police Department.

52.     Fran's complaint, *inter alia*, stated the following:

| | |
|---|---|
| What is your specific complaint? | Police misconduct, excessive force, failure to follow police procedure, unlawful arrest |
| Date and Time of Incident | 3/25/17  11:30am |
| Location of the Incident | Hopewell High School (where did it happen?) |
| Were there any Witnesses? | Yes |

53.     Pierre's complaint, *inter alia*, highlighted the following:

15

> Re: Citizen Complaint for unlawful arrest, use of excessive and unnecessary force, displaying an appearance and behavior that would lead citizens and the community to lose trust and confidence in the Hopewell Police Department against Officer Baxter and the officers assisting her during the arrest of a citizen.
>
> And
>
> Complaint for mismanagement of a Police detail, lack of operational and strategic planning, lack of supervision with incapacity to lead subordinates to respect the rights of a citizen under arrest according to the United States Constitution 4th amendment and the United States Bill of rights, displaying ignorance of the Penal Code misinterpreting the right to take legal action against police officers and Department as a threat, and refusal to comply once informed of the proper legal procedure.

54.     The Hopewell Police Department acknowledged receipt of Pierre's complaint.  Later that week, the Deputy Chief of Police met with Pierre to try to convince Pierre that he (the Deputy Chief) had video evidence that Fran had, in fact, been belligerent and that Fran should accept the Class 1 Misdemeanor charge.  In truth, the Deputy Chief had no such evidence because no such evidence existed.  The Hopewell Police did nothing about the complaints made by Pierre and Fran.

**E.**     ***Kyles' False Testimony At Fran's Trial***

55.     On Monday, September 18, 2017, Pierre accompanied Fran to her criminal trial at the City of Hopewell General District Court – Criminal Division.

56.     Pierre saw the court reporter's notes of Kyles' testimony.

57.     During the trial, Kyles committed perjury.

58.     Kyles falsely testified that on March 25, 2017 – the day of the incident at the Fine Arts Festival – Fran was belligerent, loud and used cursed words in the direction of the police officers involved.

59.     Kyles also falsely testified that Fran and Pierre's daughter, who witnessed Fran's false arrest, had rolled here eyes and stated that she was embarrassed by Fran's actions.

60.    In her testimony, Baxter flatly contradicted Kyles.  Baxter confirmed that no curse words were used by Fran during the whole incident and that Kyles was, in fact, lying to the Court.

61.    Pierre did not know Kyles.

62.    In the afternoon of September 18, 2017, as he often did since he starting teaching at Hopewell High School, Pierre went outside and Staff working the bus duty. When he went outside, Pierre saw very few adults.  Most of the buses were in line in front of the Main entrance to the school.  Pierre walked down the sidewalk and observed students walking back and forth to different buses.  After helping a student catch a bus, Pierre walked back down the sidewalk.  As he walked towards the main entrance, he looked inside the buses as he passed each one.  About mid-way between the main entrance and the auditorium entrance, Pierre heard an argument between two male students.  When he located the two students, Pierre positioned himself between the two and made sure that the Security Officer (Tate) saw Pierre in case there was a need to intervene.  The students stopped their argument right away.  As he continued to walk towards the end of the bus line, Pierre saw the driver of the last bus outside with a little girl discussing something with an older (teenage student) girl.  As Pierre headed towards the bus driver, he looked in another bus and, to his surprise, he saw Kyles.

63.    Kyles was sitting behind the wheel.  Pierre stood in the open door.  Pierre looked at Kyles and stated, "You should be ashamed of yourself.  You're a liar".

64.    Kyles replied in a defiant tone, "I'm proud of myself", to which Pierre queried, "You are proud to be a liar?".

17

65.     Kyles the falsely stated "Don't threaten me".  Pierre told Kyles that "I'm not threatening you, I'm telling you that you are a liar"

66.     Kyles started to gesticulate and told Pierre that if he did not leave and stopped talking to him he (Kyles) would "make a complaint to Dr. Hackney", to which Pierre replied, "Go ahead, please go ahead".

67.     Kyles remained seated and said, "I feel threatened", and waving his right hand upward like a duster, added "step away from my bus".

68.     As he was leaving, Pierre told Kyles "you had your 15 minutes of glory under the sun, but you are a low life liar".

69.     Pierre reported the incident with Kyles to his superiors.

70.     In the evening of September 18, 2017, Pierre attended his daughter's Middle School open house and kept his phone off.  When he returned home, Fran told Pierre that Hopewell High School was trying to reach him.  At about 9:00 p.m., Pierre saw Assistant Principal Dr. Pam Areni's text message.

71.     Pierre called Dr. Areni.  Dr. Areni informed Pierre that Kyles had made a complaint to Melody Hackney, Superintendent of the HCPS ("Hackney") and to the Hopewell police that, *inter alia*, Pierre had "threatened" Kyles.  Dr. Areni further informed Pierre that he was suspended with pay until further notice.

72.     Based upon Kyles' complaint, Costello sought and obtained a warrant for Pierre's arrested on a charge of "obstruction of justice".

73.     After Pierre learned that a warrant had been issued for his arrest, Pierre's legal counsel called and left a message with the Chesterfield County Police ("CPD") that Pierre would turn himself in voluntarily to the Hopewell Police Department with his

attorney escorting him on Monday, September 25, 2017.  Despite Pierre's agreement to voluntarily turn himself in, Costello intentionally sent multiple requests to the CPD to serve the arrest warrant so that every shift someone would get a new copy from Hopewell to serve an arrest warrant on Pierre.  The CPD came to Pierre and Fran's home on September 22, 2017 during a sleepover for their daughter's birthday to arrest Pierre. Pierre and Fran's children and three (3) other girls from the neighborhood (ages 11-12) answered the door to a Chesterfield Police Officer asking for Pierre.  Additionally, another Chesterfield Police Officer positioned himself along the fence line between Pierre's home and his neighbor's house to see the rear door of Pierre's home.  Pierre's neighbors called to find out what was happening.  Pierre was not home.  Fran explained the situation to the CPD officer, who, after initially speaking loud enough for the girls to hear that they had a warrant for Pierre's arrest, immediately apologized and lowered his voice.  Of course, the girls went home and told their parents that Mr. Belisle was going to be arrested.  Fran called Pierre to tell him that the CPD had showed up during the sleepover to arrest Pierre.  Rather than wait until Monday, Pierre turned himself in to the CPD on Saturday, September 23, 2017.

74.    CPD transported Pierre in a police squad car to the Chesterfield-Hopewell line, where Pierre was transferred to the custody of the Hopewell police who took him to the Hopewell Police Department, where Pierre was detained and taken before a Magistrate.

75.    Although Pierre was released from custody by the Hopewell Magistrate on a recognizance bond, the terms of his release were such that he was prohibited from traveling outside the Commonwealth of Virginia during the pendency of his case.  This

was around Pierre and Fran's Anniversary, when they had planned to go to the new MGM resort in the National Harbor (which is in Maryland).  Pierre and Fran did not go.

76.     Section 18.2-460 of the Virginia Code (1950), as amended provides that if a person "without just cause knowingly obstructs a … witness … in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such … witness …he shall be guilty of a Class 1 misdemeanor."  Similarly, any person who "by threats or force, knowingly attempts to … obstruct or impede the administration of justice in any court, is guilty of a Class 1 misdemeanor."

77.     The allegations in warrant of arrest for obstruction of justice are false.

78.     Kyles caused the arrest warrant to be procured and issued without probable cause.

79.     In causing the arrest warrant to be procured and issued, Kyles acted with malice.  Kyles knew that Pierre had done nothing to obstruct or impede Kyles in the performance of his duties as a witness against Fran.  Kyles had already testified before Pierre talked to him on September 18, 2017.  Kyles knew his complaint was false.

80.     In causing Pierre to be arrested for obstruction of justice, Kyles acted maliciously, in that his controlling motive was something other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.  Kyles motive was reprisal for Pierre pointing out Kyles' perjury.

**F.**     _**All Charges Dropped**_

81.     Fran and Pierre engaged legal counsel (Todd M. Ritter, Esquire, Daniels, Williams, Tuck & Ritter) to represent them in connection with the false charges leveled, respectively, by Baxter, Whittington and Kyles.

82.     After one general continuance, the Commonwealth dismissed the charge against Pierre in January 2018.

83.     On January 10, 2018, immediately before trial, the Commonwealth dismissed the charge against Fran by nolle prosequi.

84.     Notwithstanding the dismissal of the false charges, Fran and Pierre suffered great harm as the result of the aforesaid actions of Baxter, Whittington and Kyles.  Such harm includes, but is not limited to, the following:

  a.     Fran and Pierre were deprived of their liberty in that they were both arrested, seized, taken into custody, forced to confine their freedom of bodily movement, prohibited from traveling outside of Virginia, forced (in the case of Pierre) to absent himself from his chosen profession, and forced to repeatedly present themselves in the Hopewell General District Court at criminal proceedings against them;

  b.     Fran and Pierre were forced to expend sums of money on attorneys and to incur other expenses in order to defend against the false criminal charges, said loss also being a deprivation of property; and

  c.     As the result of the foregoing, Fran and Pierre each suffered great insult, humiliation, embarrassment, damage to reputation, pain, anxiety, fear, as well as great inconvenience and interference with their lives.

## COUNT I – FEDERAL MALICIOUS PROSECUTION (§ 1983)

### (Against Baxter and Whittington)

85.     Fran restates paragraphs 1 through 84 of this Complaint and incorporates them herein by reference.

86.     As the result of the foregoing, Fran was subject to an unreasonable seizure of her person in violation of the Fourth Amendment and she was deprived of her liberty and/or her property without Due Process of law.

87.     By their actions as alleged herein, all of which took place under color of State law, Baxter and Whittington are liable to Fran for actual damages as well as punitive damages and attorneys' fees, based on their malicious prosecution as defined by applicable Federal law.

## COUNT II – MALICIOUS PROSECUTION

### (Against Baxter and Whittington)

88.     Fran restates paragraphs 1 through 87 of this Complaint and incorporates them herein by reference.

89.     The criminal prosecution of Fran was malicious.  The prosecution was instituted by or with the cooperation of Baxter and Whittington without probable cause. Given the state of facts existing on March 25, 2017, known to the defendants, there was no good faith basis for the defendants to believe that Fran was guilty of any crime, including, without limitation, disorderly conduct in a public place.

90.     In procuring Fran's arrest, Baxter and Whittington intentionally falsified evidence and ignored and/or covered-up the CCTV and bodycam videotapes.

91.     The prosecution terminated in a manner favorable to Fran.

92.    Baxter and Whittington's actions constitute malicious prosecution.

93.    Baxter and Whittington acted with total disregard for the truth and with reckless indifference to Fran.   Defendants knew about Fran's profession and the importance of her reputation to her profession.   Fran's arrest was in reprisal and retaliation for asking questions.   Defendants acted out of spite, ill-will, gross negligence, and a desire to injure Fran.

94.    As a direct result of the defendants' malicious prosecution, Fran suffered damage and incurred loss, including, but not limited to, pain and suffering, severe emotional distress and trauma, fear, apprehension, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage to reputation, attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $1,000,000.

## COUNT III – FALSE IMPRISONMENT

### (Against Baxter and Whittington)

95.    Fran restates paragraphs 1 through 94 of this Complaint and incorporates them herein by reference.

96.    Baxter and Whittington caused Fran to be illegally arrested and detained. Baxter and Whittington caused Fran's liberty to be restrained without any sufficient legal excuse.   Baxter and Whittington knew, or with minimal diligence, could have easily discovered that Fran did not commit any crime on March 25, 2017.

97.    Baxter and Whittington's actions constitute the tort of false imprisonment.

98.    As a direct result of the defendants' false imprisonment, Fran suffered damage and incurred loss, including, but not limited to, pain and suffering, severe

emotional distress and trauma, fear, apprehension, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage to reputation, attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $1,000,000.

## COUNT IV – DEFAMATION *PER SE*

### (Against Baxter and Whittington)

99.     Fran restates paragraphs 1 through 98 of this Complaint and incorporates them herein by reference.

100.    Baxter and Whittington made and published false statements of fact, which are detailed verbatim above, about and concerning Fran, including, without limitation, the fact that Fran committed the crime of disorderly conduct.

101.    Baxter and Whittington's false statements constitute defamation *per se*. The statements accuse and impute to Fran the commission of a Class 1 Misdemeanor. The statements also impute to Fran an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment.  The statements also substantially prejudice Fran in her profession as an attorney, law professor, lecturer and former Diplomat.

102.    Baxter and Whittington knew their statements were false at the time made and made the statements recklessly and with the intent to silence Fran.

103.    There is no evidentiary support for Baxter and Whittington's false statements.  Baxter and Whittington disregarded known evidence and otherwise lacked any good faith basis for the statements.  The false statements with reckless disregard for the truth and/or consequences to Fran.

24

104.    As a direct result of the defendants' defamation, Fran suffered damage and incurred loss, including, but not limited to, pain and suffering, severe emotional distress and trauma, fear, apprehension, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage to reputation, attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $1,000,000.

## COUNT V – INSULTING WORDS

### (Against Baxter and Whittington)

105.    Fran restates paragraphs 1 through 104 of this Complaint and incorporates them herein by reference.

106.    Baxter and Whittington's insulting words, in the context and under the circumstances in which they were spoken, tend to violence and breach of the peace.  Like any reasonable person, Fran was angered and provoked by Baxter and Whittington's insulting words.

107.    Baxter and Whittington's words are fighting words, which are actionable under § 8.01-45 of the Virginia Code (1950), as amended.

108.    As a direct result of the defendants' insulting words, Fran suffered damage and incurred loss, including, but not limited to, pain and suffering, severe emotional distress and trauma, fear, apprehension, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage to reputation, attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $1,000,000.

## COUNT VI – MALICIOUS PROSECUTION

### (Against Costello and Kyles)

109.    Pierre restates paragraphs 1 through 108 of this Complaint and incorporates them herein by reference.

110.    The criminal prosecution of Pierre was malicious.  The prosecution was instituted by or with the cooperation of Costello and Kyles without probable cause. Given the state of facts existing on September 18, 2017, known to Costello and Kyles, there was no good faith basis for Costello or Kyles to believe that Pierre was guilty of any crime, including, without limitation, obstruction of justice.

111.    In procuring Pierre's arrest, Costello and Kyles misrepresented material facts and falsified evidence.

112.    The prosecution terminated in a manner favorable to Pierre.

113.    Costello and Kyles' actions constitute malicious prosecution.

114.    Costello and Kyles acted with total disregard for the truth and with reckless indifference to Pierre.  Costello and Kyles knew that Pierre was a Teacher and retired Police Officer and knew the importance of his reputation to his profession. Pierre's arrest was in reprisal and retaliation for Pierre's statements during Fran's arrest and for Pierre pointing out that Kyles had lied under oath at Fran's trial.  Costello and Kyles acted out of spite, ill-will, gross negligence, and a desire to injure Pierre.

115.    As a direct result of Costello and Kyles' malicious prosecution, Pierre suffered damage and incurred loss, including, but not limited to, pain and suffering, severe emotional distress and trauma, fear, apprehension, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage to reputation (including a

written reprimand in Pierre's employment file), attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $1,000,000.

## COUNT VII – DEFAMATION *PER SE*

### (Against Costello and Kyles)

116.    Fran and Pierre restate paragraphs 1 through 115 of this Complaint and incorporates them herein by reference.

117.    Costello and Kyles made and published false statements of fact, which are detailed verbatim above, about and concerning both Fran and Pierre, including, without limitation, the fact that Fran committed the crime of disorderly conduct and that Pierre committed the crime of obstruction of justice.  Kyles falsely attributed to Fran and Pierre words that Fran and Pierre next spoke.

118.    Costello and Kyles' false statements constitute defamation *per se*.  The statements accuse and impute to Fran and Pierre, respectively, the commission of Class 1 Misdemeanors.  The statements also impute to Fran and Pierre an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment.  The statements also substantially prejudice Fran and Pierre in their professions.

119.    Costello and Kyles knew their statements were false at the time made and made the statements recklessly and with the intent to hurt Fran and Pierre.

120.    There is no evidentiary support for Costello and Kyles' false statements. Costello and Kyles manufactured the statements out of whole cloth.  They lacked any good faith basis for the statements.  They made the false statements with reckless disregard for the truth and/or consequences to Fran and Pierre.

121.    As a direct result of Costello and Kyles' defamation, Fran and Pierre each suffered damage and incurred loss, including, but not limited to, pain and suffering, severe emotional distress and trauma, fear, apprehension, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage to reputation, attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $1,000,000.

## COUNT VIII – INSULTING WORDS

### (Against Costello and Kyles)

122.    Pierre restates paragraphs 1 through 121 of this Complaint and incorporates them herein by reference.

123.    Costello and Kyles' insulting words, in the context and under the circumstances in which they were spoken, tend to violence and breach of the peace.  Like any reasonable person, Pierre was angered and provoked by Costello and Kyles' insulting words.

124.    Costello and Kyles' words are fighting words, which are actionable under § 8.01-45 of the Virginia Code (1950), as amended.

125.    As a direct result of Costello and Kyles' insulting words, Pierre suffered damage and incurred loss, including, but not limited to, pain and suffering, severe emotional distress and trauma, fear, apprehension, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage to reputation, attorney's fees, costs, and other out-of-pocket expenses in an amount to be determined by the Jury, but not less than $1,000,000.

Fran and Pierre allege the foregoing based upon personal knowledge, public statements of others, including the defendants, and records in their possession and control.  Fran and Pierre believe that substantial additional evidentiary support, which is in the exclusive possession of the defendants and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Fran and Pierre reserve their right to amend this Complaint and to add additional claims and party-defendants upon discovery of additional instances of the publication of defamatory statements and insulting words.

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above and to be developed during discovery, Plaintiffs respectfully request the Court to enter Judgment against the defendants, jointly and severally, as follows:

A.     Compensatory Damages in an amount to be determined by the Jury, but not less than $2,000,000.00;

B.     Punitive damages in the amount of $1,000,000 or the maximum amount allowed by law;

C.     Prejudgment interest on the principal sum awarded by the Jury at the rate of six percent (6%) per annum from March 25, 2017 until the date of Judgment;

D.     Post-judgment interest at the rate of six percent (6%) per annum until paid;

E.     Attorney's Fees as provided for under § 1988 and *Burruss*;

F.     Costs;

G.     Such other relief as is just and proper.

**TRIAL BY JURY IS DEMANDED**

DATED:      March 23, 2018

FRANCES J. BELISLE
PIERRE BELISLE

By:

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:    (804) 501-8272
Facsimile:    (202) 318-4098
Email:        **stevenbiss@earthlink.net**

*Counsel for the Plaintiffs*