IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FRANCES J. BELISLE et al.,

Plaintiffs,

v. Case No. 3:18-cv-514-MHL

ANGELA BAXTER et al.

Defendants.

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs, Frances J. Belisle and Pierre Belisle ("Plaintiffs"), by counsel, respectfully submit this combined Memorandum in Opposition to the motions to dismiss filed by defendants, Laura Baxter,[1] Michael Whittington, and Lawrence Costello and defendant, Donald Kyles. [*ECF Nos. 8, 10*].

## I. PROCEDURAL AND FACTUAL HISTORY

This is an action for malicious prosecution, false imprisonment, defamation *per se*, and insulting words. The case arises out of criminal charges that were falsely and malicious instigated against the Plaintiffs by the Defendants without probable cause and defamatory statements that were published about the Plaintiffs. [*ECF No. 1-1 ("Complaint")*]. Plaintiff, Frances Belisle, is an attorney, author, teacher and PhD

[1] Plaintiffs' Complaint incorrectly identifies Laura Baxter as "Angela" Baxter. This is a misnomer. Plaintiffs intend to file a motion to amend and correct the misnomer. Counsel for Defendant Baxter (Mr. Capps) indicates that he will consent to the motion after having an opportunity to review it.

candidate, who was an Officer in the United States Air Force and a United States Diplomat with Top Secret Clearance. [*Complaint*, ¶ *3*]. Mrs. Belisle raises seven counts. [*Complaint*, ¶¶ *2(a-e, g)*]. Count I asserts a claim pursuant to 42 U.S.C. § 1983[2] and premised on the Fourth Amendment,[3] alleging that Defendants, Baxter and Whittington, instigated criminal charges of disorderly conduct without probable cause. [*Id.*, ¶¶ *85-87*]. In Count II, Mrs. Belisle alleges malicious prosecution under state law. [*Id.*, ¶¶ *88-94*]. In Count III, Mrs. Belisle asserts false imprisonment under state law. [*Id.*, ¶¶ *95-98*]. In Counts IV and V, Mrs. Belisle states claims of defamation *per se* and insulting words under Virginia law. [*Id.*, ¶¶ *93-108*]. Plaintiff, Pierre Belisle, is a high school teacher and a decorated retired police officer. [*Id.*, ¶ *4*]. Mr. Belisle raises three counts in his complaint. [*Id.*, ¶¶ *2(f-g)*]. Count VI asserts a claim of malicious prosecution under state law, alleging that Defendants, Costello and Kyles, instigated criminal charges of obstruction of justice without probable cause. [*Id.*, ¶¶ *109-115*]. Count VIII states a

---

[2] This statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983.

[3] The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

claim of insulting words under state law. Finally, in Count VII, Mrs. Belisle and Mr. Belisle state claims of defamation *per se* and insulting words against Costello and Kyles under Virginia law. [*Id.*, ¶¶ *116-125*].

Plaintiffs commenced this action in State Court. Defendants each filed demurrers to Plaintiffs' complaint. Before the state court could rule on the motions, however, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. [*ECF No. 1*].

The matter is now before the Court on Defendants' motions to dismiss pursuant to Fed. R. Civ P. 12(b)(6).[4] The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1367(a).[5] For the reasons stated below, Defendants' motions should be denied.

## II. <u>STANDARD OF REVIEW</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th

---

4 "[A] party may assert the following defenses by motion: … failure to state a claim upon which relief can be granted…." Fed. R, Civ. P. 12(b)(6).

5 28 U.S.C. § 1331 confers subject mater jurisdiction when, as here, the case arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1367(a) states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).[6]

## III. PRINCIPLES OF LAW AND ARGUMENT

### A. *COUNTS I and II – Malicious Prosecution*

Plaintiffs agree that Defendants' Brief [*ECF No. 9, pp. 5-6*] accurately states the law applicable to a § 1983 malicious prosecution claim and the analogous common law tort of malicious prosecution.

---

6 The Defendants' recitation of the facts pays mere lip service to the standard of review. The Defendants water down the allegations in paragraphs 19 – 28. [*See, e.g., ECF No. 9, pp. 2-3*]. They completely disregard other facts. They characterize their behavior in a light most favorable to *themselves*. Defendants point out correctly that Mrs. Belisle was convicted in the Hopewell General District Court and that she duly appealed to the Hopewell Circuit Court. As relevant to the claims of malicious prosecution, the false charges against Mrs. Belisle and Mrs. Belisle were dismissed by *nolle prosequi* in January 2018. [*Complaint, ¶¶ 82-83*].

**1. *Whittington***

Baxter concedes that Plaintiffs' complaint states sufficient facts to establish that Baxter "seized" Mrs. Belisle and instigated a criminal prosecution for disorderly conduct without probable cause.

Mrs. Belisle alleges sufficient facts to plausibly show that Whittington seized her and participated in the instigation of the false criminal charges. Although Whittington arrived on the scene after Mrs. Belisle was in already hand-cuffs, Whittington ordered Officer ReDavid to take Mrs. Belisle to the principal's office. [*Complaint*, ¶ *34*]. This is a "seizure" of Mrs. Belisle's person. She was not free to go. Whittington and Baxter, thereafter, worked "in combination" to take Mrs. Belisle into custody and haul her away. Indeed, Whittington was in charge of Baxter and the continuing seizure of Mrs. Belisle. [*Id.*, ¶¶ *2(a), 38, 40, 41, 42, 43*]. In paragraph 41, for instance, Plaintiffs allege as follows:

> 41. After almost twenty (20) minutes, Whittington waddled into the Main Office. Pierre asked him why Fran was still hand-cuffed since the situation had been under control for a long time. Whittington told Pierre that Fran was still handcuffed because she was "still under arrest". Whittington then went into the conference with Fran.

Viewing the facts in the light most favorable to Mrs. Belisle, the complaint sufficiently alleges that Whittington "seized" Mrs. Belisle and actively participated in the arrest and prosecution of Mrs. Belisle.

**2. *__Baxter and Whittington Instigated The Prosecution__***

Baxter and Whittington instigated the false criminal charge against Mrs. Belisle when they caused the summons to be issued and served on Mrs. Belisle. In paragraphs 89 and 90, Mrs. Belisle alleges the following facts:

> 89. The criminal prosecution of Fran was malicious. The prosecution was instituted by or with the cooperation of Baxter and Whittington without probable cause. Given the state of facts existing on March 25, 2017, known to the defendants, there was no good faith basis for the defendants to believe that Fran was guilty of any crime, including, without limitation, disorderly conduct in a public place.
>
> 90. In procuring Fran's arrest, Baxter and Whittington intentionally falsified evidence and ignored and/or covered-up the CCTV and bodycam videotapes.

[*see also Complaint, ¶ 46 ("Despite Keohane's representations, neither Baxter nor Whittington nor any other Hopewell police officer ever produced the exculpatory body camera video")*; *¶ 49 ("Keohane republished false and defamatory statements of and concerning Fran that he (Keohane) had heard from Baxter and Whittington, including: 'She [Fran] was very loud, very aggressive and belligerent to the officers. They gave her several opportunities to leave the area and to calm down and that just didn't happen. If she just listened to the Officers, the arrest would have never occurred'"*].

Here, Baxter and Whittington initiated the criminal prosecution, made up facts and concealed material facts relating to Mrs. Belisle's "conduct" on March 25, 2017. Plaintiffs' complaint alleges no facts that would demonstrate that there were *__any__* superceding and intervening causes of Mrs. Belisle's criminal prosecution. The fact that

a Commonwealth's Attorney "decided to pursue" the false charge instigated by Baxter and Whittington is not a superceding and intervening cause.[7]

"A proximate cause of an injury or damage is a cause that, in natural and continuous sequence, produces the injury or damage. It is a cause without which the injury or damage would not have occurred." *Virginia Model Jury Instruction 5.000* (Definition of Proximate Cause); *Williams v. Joynes*, 278 Va. 57, 62, 677 S.E.2d 261 (2009) ("a 'proximate cause' is an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred. An event may have more than one proximate cause and, under certain circumstances, a proximate cause may also be a superseding cause that severs the link of proximate causation between the initial negligent act and the resulting harm, thereby relieving the initial tortfeasor of liability.") (many citations omitted).

Whether an act is a superceding or intervening cause of an event is a question of fact for the Jury.

**3. *Probable Cause***

In the context of a malicious prosecution action, "probable cause" is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. The determination whether a defendant had probable cause to believe a crime

---

[7] The fact that Mrs. Belisle was convicted in the General District Court – an extraneous fact not mentioned in the complaint – is irrelevant. It is not "equivalent to a grand jury's decision to indict". [*ECF No. 9, p. 7*]. Nor is the fact that Mrs. Belisle appealed relevant. What is relevant is the undisputed fact that charge was dismissed by *nolle prosequi*, and that the proceeding terminated in a manner not unfavorable to Mrs. Belisle.

was committed is judged with reference to the time the defendant took the action initiating the criminal charges. When the facts relating to the question of probable cause are in dispute, the issue is one of fact to be resolved by the trier of fact. *See, e.g., Stanley v. Webber*, 260 Va. 90, 531 S.E.2d 311 (2000).

Whether there is "probable cause" is a quintessential question of fact. Here, the facts are in dispute. Mrs. Belisle did not "argue" with Baxter. She did not act disorderly in any way. She calmly asked a question that under the circumstances any parent at a child's school function, indeed any reasonable person, would ask: upon what grounds are you evicting me from the school? Mrs. Belisle has alleged throughout the complaint that Baxter and Whittington lacked probable cause. She has alleged facts in support of her contention. For instance, in paragraph 33 of the complaint, Plaintiffs allege that:

> 33. The incident was captured on videotape and on bodycams worn by Baxter and Baxter's fellow officers. The videotapes demonstrate that there was no probable cause and that Baxter's conduct was objectively unreasonable.

[*See also Complaint, ¶¶ 19-30*].

**4. _Malice_**

Baxter and Whittington next argue that the complaint is "devoid" of allegations of malice. [*ECF No. 9, p. 9*].

First, it is well-established in Virginia that malice may be inferred from the lack of probable cause. *See, e.g., Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 684, 152 S.E.2d 271 (1967). Mrs. Belisle alleges facts that taken as true demonstrates that Baxter and Whittington lacked probable cause.

Second, whether a defendant "was actuated by malice" is a ***question of fact for a jury*** to decide. *See, e.g., Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134-135, 575 S.E.2d 858 (2003) (citations and quotations omitted); *see id. Harrington v. Sprint Nextel Corp.*, 2008 WL 2228524 * 6 (E.D. Va. 2008) (Cacheris, J.) ("Plaintiffs have pled that Sprint was motivated by "spite, ill-will, negligence and malice." Compl. ¶ 222. "[T]he question whether a defendant was actuated by malice, and has abused the occasion and exceeded the privilege is a question of fact for a jury" rather than one for the Court to determine") (quotations omitted).

**5. *The Issue Of Qualified Immunity***

Whether Baxter and Whittington are entitled to qualified immunity cannot be resolved without evidence.

Section 1983 provides a private right of action for deprivation of constitutional rights by persons acting under the color of law.

> "Section 1983, therefore, 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.' Hence, to establish liability under Section 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiffs federal constitutional or statutory rights, and thereby caused the complained of injury."

*Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) *(quoting Westmoreland v. Brown*, 883 F. Supp. 67, 71 (E.D. Va. 1995)) (internal citations omitted).

The doctrine of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell* v. *Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity shields government officials performing discretionary functions from liability for civil damages, insofar as their conduct does not violate clearly established rights of which a reasonable person would have known, in order to "avoid excessive disruption of

government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan, 555* U.S. 223, 231 (2009). Whether a police officer is entitled to qualified immunity requires a two-part analysis:

> "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."

*Pearson,* 555 U.S. at 232 (internal citations omitted).

In assessing whether the rights allegedly violated were clearly established at the time of the officer's conduct, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640. Even if no prior decision addresses the precise conduct at issue, a right can be deemed clearly established if "its illegality would have been evident to a reasonable officer based on existing caselaw." *Rogers* v. *Pendleton*, 249 F.3d 279, 285-86 (4th Cir. 2001 ).

**a. *Mrs. Belisle's Fourth Amendment Rights***

The right at issue in this matter involves the right not to be arrested except upon probable cause to believe that Mrs. Belisle violated § 18.2-415 of the Virginia Code. As alleged in the complaint:

> 28. Section 18.2-415 of the Virginia Code (1950), as amended, provides that a person is "guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," she "[i]n any … public building, or while in or on a … public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed" or if she "[w]illfully … disrupts the operation of any school or any activity conducted or sponsored by any school, if the disruption (i) prevents or interferes with the orderly conduct of the operation or activity or (ii) has a direct tendency to cause acts of violence by the person or persons at whom, individually, the disruption is directed."

"Probable cause exists when the facts and circumstances within an officer's knowledge or of which he possesses reasonably trustworthy information – are sufficient in themselves to convince a person of reasonable .caution that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000). "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict. 'It is an objective standard of probability that reasonable and prudent persons apply in everyday life.'" *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) *(quoting United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)).

Determining whether probable cause exists involves an individualized and fact-specific inquiry based on the totality of the circumstances. *Wadkins*, 214 F.3d at 539. Probable cause "could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Pritchett*, 973 F.2d at 314. "[T]he determination whether a reasonable person in the officer's position would have known that his [or her] conduct would violate the right at issue must be made on the basis of information actually

possessed by the officer at the critical time." *Id.* at 312 *(citing Anderson,* 485 U.S. at 641).

Here, Baxter and Whittington possessed insufficient factual knowledge to prudently believe that Mrs. Belisle violated § 18.2-415, whether considering Mrs. Belisle's conversations with Baxter or other facts stated in the complaint, such as the following facts:

> 24. Fran was not intoxicated. Fran never raised her voice. She never threatened Baxter or anyone else. Fran never approached Baxter or made any gestures towards her. Fran did not incite Baxter or anyone else to violence. Fran did nothing to disrupt the HCPS event and, indeed, the event was never disrupted.
>
> 25. The whole exchange – from the initial contact with Baxter to the handcuffs and physical restraint – lasted less than one minute.

**b. *Clearly Established Constitutional Right***

Having ascertained that Baxter and Whittington violated Mrs. Belisle's Fourth Amendment rights, the Court must next detennine whether that constitutional right was clearly established.

"For a right to be clearly established, it is not necessary for the 'exact conduct at issue' to have been previously held unlawful." *Merchant,* 677 F.3d at 665 *(quoting Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir. 1998)); *see Anderson,* 485 U.S. at 640. Clearly established constitutional rights "include[] not only already specifically adjudieated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Pritchett,* 973 F.2d at 314.

At the time of Mrs. Belisle's arrest, it was clearly established that officers were not at liberty to arrest citizens for orderly conduct on school property without any support or probable cause. *See Merchant,* 677 F.3d at 666. Given the current allegations before the Court, and no evidence before it, no reasonable officer in Baxter and Whittington's position could have believed that the Fourth Amendment permitted an arrest when the totality of the facts and circumstances suggested that Mrs. Belisle had engaged in no disorderly conduct. Indeed, Baxter and Whittington refused to identify what conduct had led to Mrs. Belisle's arrest. [*Complaint*, ¶¶ *22*, *27*, *31*, *43*].

**B. *COUNT III – False Imprisonment***

In Virginia, false imprisonment is defined as the restraint of one's liberty without sufficient cause.

To maintain an action for false imprisonment, it is not necessary to show malice, ill will or the slightest wrongful intention, and the good faith of a defendant will not defeat a plaintiff's right to recover. *See, e.g., Zayre of Virginia v. Gowdy*, 207 Va. 47, 50-51, 147 S.E.2d 710 (1966); *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 489-490, 50 S.E.2d 387 (1948) ("In an action for false imprisonment, as distinguished from an action for malicious prosecution, the good faith of the defendant in causing the arrest, or probable cause, therefore, is no defense to a claim for actual or compensatory damages sustained in the consequence thereof.") (citations omitted); *Sands v. Norvell*, 126 Va. 384, 101 S.E. 569 (1919) ("This is not an action for malicious prosecution, but for false imprisonment, and in such a case want of probable cause is not essential to the right of recovery"). False imprisonment may result not only from the arrest of a person without

any valid warrant, but also from the unlawful detention of a prisoner who has been lawfully arrested. *Sands*, 101 S.E. at 574.

In support of Count III, Mrs. Belisle alleges the following:

> 96. Baxter and Whittington caused Fran to be illegally arrested and detained. Baxter and Whittington caused Fran's liberty to be restrained without any sufficient legal excuse. Baxter and Whittington knew, or with minimal diligence, could have easily discovered that Fran did not commit any crime on March 25, 2017.

As described above, the facts stated in the complaint show that Baxter and Whittington restrained Mrs. Belisle's liberty without probable cause. Mrs. Belisle has stated a claim of false imprisonment.

Whether Baxter and Whittington acted in "good faith" cannot be resolved without evidence. Mrs. Belisle contends that:

> 32. Baxter exercised her power irresponsibly. In truth, Fran's simple questions irritated Baxter and Baxter precipitously retaliated by arresting Fran and depriving her of her constitutional rights. Baxter abused her authority and acted with reckless disregard for the truth, in doing so, she violated Fran's well-established constitutional rights.

[*see also Complaint, ¶ 89 ("there was no good faith basis for the defendants to believe that Fran was guilty of any crime, including, without limitation, disorderly conduct in a public place.")*].

When Mrs. Belisle's allegations are viewed in the light most favorable to her, Baxter and Whittington's motion to dismiss Count III must be denied.

**C. *COUNT IV, V, VII and VIII – Defamation and Insulting Words***

The elements of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013).

At common law, words that are actionable as defamation *per se* include (1) those which impute to a person the commission of a crime involving moral turpitude or which is punishable by imprisonment in a state of federal institution, (2) those which impute to a person an "unfitness to perform the duties of a job or a lack of integrity in the performance of the duties", and (3) those which prejudice a person in his profession or trade. *Tronfeld v. Nationwide Mutual Insurance Company*, 272 Va. 709, 713, 636 S.E.2d 447 (2006) (citing *Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632 (1981)). False statements[8] of criminal or illegal conduct, mismanagement, unethical and unprofessional practices, moral delinquency and mental incompetence are universally found to be actionable as defamation *per se*. *See, e.g., Harrell v. Colonial Holdings, Inc.*, 2013 WL 550424, at * 7 (E.D. Va. 2013) ("Allegations of 'illegal' conduct are … clearly actionable, because an accusation that a person's conduct is 'illegal' is objectively provable. Couching such an unequivocal statement as "legal opinion" does not change the analysis.").

[8] The Supreme Court of the United States has recognized "[t]ime and again" that "false factual statements possess no First Amendment value." *United States v. Alvarez*, 132 S.Ct. 2537, 2560 (2012). Thus, any attempt by the Defendants to hide behind the "First Amendment" is unavailing.

**1. *Baxter and Whittington's Words Are Defamatory***

Baxter and Whittington publicly accused Mrs. Belisle of disorderly conduct – a crime for which Mrs. Belisle, an attorney, could be imprisoned. Mrs. Belisle states the facts:

> 27. Fran asked several times what she was being arrested for. Baxter refused to tell Fran until Fran identified herself as an attorney. At that point, Baxter stated to Fran and publicly in front of many people that Fran was being arrested for "disorderly conduct in a public place". Baxter refused to tell Fran what Fran had done that supposedly constituted "disorderly conduct".

> 34. After the police placed the handcuffs on Fran's wrists, Fran did not resist. Rather, she simply went limp. Instead of carrying Fran and supporting her back, Baxter and another officer, Michael Redavid ("Redavid"), dragged Fran outside like a common criminal while Fran cried out for Pierre. Costello was also present. After they dragged Fran outside, Baxter told Whittington that she was taking Fran to jail. Whittington told Baxter to take Fran the principal's office. Baxter said "no" and argued with Whittington for about a minute. Finally, Whittington ordered Redavid to take Fran to the office.

Baxter's published statements directly or by implication falsely accuse Mrs. Belisle of the crime of disorderly conduct. Why else would Baxter be taking Mrs. Belisle to "jail"? The statements were made while Mrs. Belisle's hands were cuffed, and, unlike the *Paramount Parks* case [*ECF No. 9, p. 14*], Baxter published her false statements in a room full of people. Mrs. Belisle further alleges as follows:

44. On March 27, 2017, the Petersburg *Progress-Index* published an online article, entitled "**Hopewell parent handcuffed after incident at Fine Arts Festival**".

45. Whittington made the following false and defamatory statements to the *Progress-Index* reporter:

> Hopewell Police Capt. Mike Whittington said that he understood that Belisle had "started getting disorderly with the officers" and yelling while they were engaged in closing off restricted areas. However, he noted that he had not personally witnessed the incident and that officers would have to review the body camera footage of the incident.

46. Despite Keohane's representations, neither Baxter nor Whittington nor any other Hopewell police officer ever produced the exculpatory body camera video.

47. On March 29, 2017, WTVR.com published an online article, entitled "**Chesterfield mom arrested at school event says 'excessive force' used**".

48. WTVR interviewed Hopewell police chief, John Keohane ("Keohane"), for the story.

49. Keohane republished false and defamatory statements of and concerning Fran that he ("Keohane") had heard from Baxter and Whittington, including:

> "She [Fran] was very loud, very aggressive and belligerent to the officers. They gave her several opportunities to leave the area and to calm down and that just didn't happen. If she just listened to the Officers, the arrest would have never occurred".

**2. *Republication***

"Republication" occurs when a speaker affirmatively reiterates or repeats an actionable statement made a defendant. *Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 11 (W.D. Va. 2016) (citing *Clark v. Viacom Int'l, Inc.*, 617 Fed.Appx. 495, 505 (6th Cir. 2015)).

The leading case in Virginia on republication is *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957).

In *Weaver*, the defendants wrote a libelous letter about the plaintiff to plaintiff's employer. Plaintiff alleged

> "that the libelous letter in question was republished on or about March 21, 1956 before a promotion board convened to consider appellant's record, at which time the contents of the letter were first made known to appellant; that the letter suggested that appellant was and is dishonest, insolvent and one to whom credit should not be extended; that it attacked his reputation for integrity; that appellees knew the libelous letter would be a permanent part of his record and would be republished in the future; that the republication of the letter was the natural and probable consequence of the appellees' act … Appellant's cause of action is grounded upon the republication of the letter, on March 21, 1956."

199 Va. at 198, 98 S.E.2d at 690. The trial court sustained a plea in bar of the statute of limitations and dismissed plaintiff's complaint for defamation with prejudice. The Supreme Court reversed, holding as follows:

> "It is well settled that the author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication. This is based upon the principle that such republication constitutes a new cause of action against the original author. However, the original author is not responsible if the republication or repetition is not the natural and probable consequence of his act, but is the independent and unauthorized act of a third party.
>
> …
>
> 'Under the weight of authority the author of a libel or slander is not liable for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, either as on a direct cause of action or by way of aggravation of damages, and such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel. But the rule has one important qualification. It is a general principle that every one is responsible for the necessary consequences of his act, and it may be that the repetition of a slander or libel may be the natural consequence of the original publication, in which case the author of the original defamatory matter would be liable. **And where the words declared on are slanderous per se their repetition by others is the natural and probable result of the original slander**.'"

199 Va. at 199-200, 98 S.E.2d at 690; *see Sponaugle v. Rutledge*, 2001 WL 1829998, at * 2 (Fairfax Cir. 2001) ("In paragraph 29 of his Motion For Judgment, Sponaugle alleges that both the original charges made to NCMEC and their 'subsequent publication by all defendants' were defamatory. The republication by NCMEC in Fairfax County was the 'natural and probable consequence' of Rutledge's initial publication to NCMEC."); *Wuchenich v. Shenandoah Memorial Hospital*, 215 F.3d 1324 (Table), at * 16 (4th Cir. 2000) ("In sum, we hold the district court properly dismissed all portions of Dr. Wuchenich's claim alleging defamation except for the portion seeking redress against SMH for the ongoing publication (knowingly allowed and expected by SMH) in the National Practitioner's Data Bank that SMH had suspended Dr. Wuchenich's medical staff privileges for professional incompetency, and for SMH's publication of the false statement that Dr. Wuchenich is professionally incompetent during the post June 1, 1997 portion of the Board of Medicine's investigation of the allegations that lead to the suspension of Dr. Wuchenich's medical staff privileges at SMH.").

Mrs. Belisle's complaint clearly and expressly alleges that "Keohane republished false and defamatory statements of and concerning" Mrs. Belisle that he "had heard from Baxter and Whittington". [*Complaint, ¶ 49*]. Because Baxter and Whittington's words are slanderous *per se*, the repetition by Keohane is "**is the natural and probable result of the original slander**." *Weaver*, 199 Va. at 199-200, 98 S.E.2d at 690.

**3. *Baxter and Whittington's Statements Are Not Opinion***

Baxter and Whittington's false statements that Mrs. Belisle committed a crime on March 25, 2017 are provably false by evidence, properly adduced, that she was completely orderly on March 25, 2017.

**4. *Costello***

Contrary to Costello's contention, Mr. Belisle[9] alleges the exact words used by Costello:

> 117. Costello and Kyles made and published false statements of fact, which are detailed verbatim above, about and concerning both Fran and Pierre, including, without limitation, the fact that Fran committed the crime of disorderly conduct and that Pierre committed the crime of obstruction of justice. Kyles falsely attributed to Fran and Pierre words that Fran and Pierre next spoke.

The defamation claim against Costello is not based upon his statements to the Magistrate Judge. Those statements are privileged. Rather, Costello intentionally and maliciously published his statements to the Chesterfield Police Department. [*Complaint*, ¶ *73*].

**5. *Kyles***

In Count VII of the complaint, Mrs. Belisle states a claim of defamation against Kyles based upon Kyles' statements to the press as follows:

> 50. Kyles falsely stated to WTVR that on March 25, 2017 Fran was "belligerent" and "used profanity".

In *Reynold v. Pionear*, the Court found that the defendant's "statement that [plaintiff] Reynolds spoke 'with profanity' constitutes an actionable statement." 2016 WL 1248866, at * 6 (E.D. Va. 2016).

---

[9] Upon review of Defendant Costello's brief and the cited authority, Mrs. Belisle withdraws and will not pursue Count VII against Costello.

> "By stating that Reynolds spoke 'with profanity,' Pionear has implied that Reynolds uttered actual profane words, the specifics of which were not divulged in the allegedly defamatory statement … At this early stage of litigation, in light of its finding that Pionear's third statement constitutes a 'provably false' actionable statement, the Court finds that the first two statements are likewise actionable … The Court now concludes that the otherwise subjective first and second statements are 'laden with factual content' supporting a claim for defamation. *See Richmond Newspapers, Inc. v. Lipscomb*, 362 S.E.2d 32, 43 n.8 (Va. 1987) (citation omitted). Coupled with Pionear's third statement, comments regarding Reynolds's 'unfavorable employment' and 'inappropriate conduct' are now, at least on the record before the Court, tied to a 'provably false' factual underpinning. To the extent they relate to Reynolds's purported use of 'profanity,' Pionear's first two statements constitute actionable statements that survive Rule 12(b)(6) scrutiny.

2016 WL 1248866, at * 7.

Mr. Belisle states a claim of defamation and insulting words against Kyles based upon the following facts alleged in the complaint:

> 71. Pierre called Dr. Areni. Dr. Areni informed Pierre that Kyles had made a complaint to Melody Hackney, Superintendent of the HCPS ("Hackney") and to the Hopewell police that, *inter alia*, Pierre had "threatened" Kyles. Dr. Areni further informed Pierre that he was suspended with pay until further notice.
>
> 72. Based upon Kyles' complaint, Costello sought and obtained a warrant for Pierre's arrested on a charge of "obstruction of justice".

Whether Pierre "threatened" Kyles is provably false and defamatory. *Compare, e.g., Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("Ransome's complaint refers to several allegedly defamatory statements made by O'Bier and by Sterrett that amount to a plausible claim for defamation. For example, Sterrett sent a text message to Berman, Berman's wife, and other ACME members about Ransome's reassignment that said, among other things, that teachers and staff at NMS worked in fear of administrative retaliation. Based on these allegations, Ransome states a plausible

claim for *per se* defamation, and discovery will provide further factual development. Accordingly, the Court denies the motion to dismiss as to Ransome's Count IV defamation *per se* claim."). *Kuley v. Fayez*, 2014 WL 10190138, at * 6-8 (Fairfax Cir. 2014) ("When Plaintiff tried to remind Fayez of the multiple discussions in the past regarding Plaintiff working late, Fayez allegedly responded: 'That's not true.  We've never had that discussion.' … This is a factual statement by Fayez that Plaintiff is not telling the truth.   Because this statement was made at a formal reprimand meeting, Fayez's claim was a particularly damning accusation.   The Court must accept as true Plaintiff's claim as to this statement's falsity.   **This statement is actionable.**" … In sum, the Court finds the following statements to be sufficiently pleaded: 1) Fayez's statement that Plaintiff was given a direct order to follow county and Department overtime policy; 2) Fayez's oral assertion that it was not true that she and Plaintiff had discussions on multiple occasions regarding Plaintiff working late; 3) Barrett's assertion that plaintiff had been spreading false rumors and innuendos about previous supervisors; 4) Barrett's assertion that Plaintiff "eavesdropped on a private conversation" between her coworkers; and 5) Any and all statements that Plaintiff engaged in a "pattern" of filing grievances against her superiors) (emphasis in original); *Butler v. N.E.W. Customer Services Companies, Inc.*, 2007 WL 5282007, at * 2 (Fairfax Cir. 2007) ("The first statement submitted to the jury in this case was that Plaintiff "had some conflicts with her co-workers because she was not always to work on time and her work style was different from her co-workers."   The first clause is actionable.   Whether or not Plaintiff had conflicts with co-workers does not depend upon the speaker's viewpoint and is a statement of fact."); *Kay v. Collins*, 1996 WL 1065519, at * 3 (Richmond Cir. 1996)

(“Defendants’ statements criticize plaintiff’s work habits, productivity, and ability to work with others, thus casting a negative light on skills and character required in any job … Due to the nature of the statements and their focus, the court finds that the comments are defamatory” – demurrer overruled).

Judge Doumar’s recent unreported decision in *McCray v. Infused Solutions, LLC*, Case 4:14-cv-00158-RGD-LRL (E.D. Va. Sept. 15, 2017) illustrates the kinds of statements that Courts routinely find to be actionable. The plaintiff was a general clerk. She received a warning notice that stated that “[e]mployee is extremely confrontational and exhibiting constant insubordinate behavior towards individuals at her work location.” The notice further stated that the plaintiff’s alleged behavior “has been an issue for over 90 days and appears to be getting significantly worse instead of improving.” In overruling the defendant’s Rule 12(b)(6) motion to dismiss, Judge Doumar held that “[t]hese statements clearly (1) could prejudice Plaintiff in the practice of her profession as a clerk and (2) contain factual connotations that could be proved false.”

Kyles statement to Costello that led Costello to seek a search warrant for “obstruction of justice” is also false and defamatory.

**a. *Qualified Privilege***

Kyles claims that his statements are subject to a qualified privilege. [*ECF No. 11, p. 12*].

This argument should be rejected out-of-hand and without more.

First, qualified privilege is an affirmative defense. Kyles may not, by use of a motion to dismiss, shift ***his*** pleading and burden of proof to Mr. Belisle. *See, e.g., Cretella v. Kuzminski*, 2008 WL 2227605, at * 10 (E.D. Va. 2008) (Spencer, J.)

("whether a defendant in a defamation action is protected by a privilege is not a matter to be resolved in the context of a motion to dismiss"); *Jordan v. Shands*, 255 Va. 492, 499, 500 S.E.2d 215 (1998) ("A defendant who asserts the qualified immunity defense, not the plaintiff, must allege and prove the elements comprising this defense … Richardson may not, by use of a demurrer, shift his pleading and proof burdens to the plaintiff.").

Second, in the event the Court considers Kyles' affirmative defense at this stage of the case, it bears repeating that the doctrine of "qualified" immunity is a limited privilege that protects a false statement from an action for defamation, only if "made in good faith, to and by persons who have corresponding duties or interests in the subject of the communication." *Smalls v. Wright*, 241 Va. 52, 54, 399 S.E.2d 805 (1991); *compare Lindeman v. Lesnick*, 268 Va. 532, 538, 604 S.E.2d 55 (2004) ("When Lindeman gave the memoranda to [his attorney] Shea, no claim had been filed with or was pending before the Commission … Lindeman was accorded the right to assert a qualified privilege by the trial court because of the attorney-client relationship that existed, but he was not entitled to assert an absolute privilege under the circumstances of this case.").

A qualified privilege is abused and lost if:

> 1. the defendant knew the statement was false or made it with reckless disregard of whether it was false or not; <u>or</u>
>
> 2. the statement was deliberately made in such a way that it was heard by persons having no interest or duty in the subject of the statement; <u>or</u>
>
> 3. the statement was unnecessarily insulting; <u>or</u>
>
> 4. the language used was stronger or more violent than was necessary under the circumstances; <u>or</u>
>
> 5. the statement was made because of hatred, ill will or a desire to hurt the plaintiff rather than as a fair comment on the subject.

*Smalls*, 241 Va. at 54-55, 399 S.E.2d at 807-808 (citing *Great Coastal Exp., Inc. v. Ellington*, 230 Va. 142, 334 S.E.2d 846 (1985)).

Mrs. And Mr. Belisle alleges that Kyles acted out of spite, ill-will and with malice. [*See, e.g., Complaint,* ¶¶ *79, 80, 119, 120*]. It is well-established that malice may be shown by direct proof or as an inference either from the defendant's statements, from the defendant's conduct, or from other aggravating circumstances, including the appearance of reprisal. *See, e.g., Daniczek v. Spencer*, 2016 WL 153086, at * 12 (E.D. Va. 2016) ("Spencer neglects that malice may be inferred under aggravating circumstances, including disregard for communications by others and the appearance of reprisal."); *PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 345, 576 S.E.2d 438 (2003) ("Proof of actual malice is not necessary. Malice may be inferred from circumstances.") (quoting *Baker v. Marcus*, 201 Va. 905, 909-910, 114 S.E.2d 617 (1960)); *Kroger Grocery and Baking Co. v. Rosenbaum*, 171 Va. 158, 161-163, 198 S.E. 461 (1938) ("the question whether there was actual malice is for the jury to determine either from direct proof or as an inference from other proof or from the libel itself").

Whether Kyles was "actuated by malice" is a ***question of fact for a jury*** to decide. *See, e.g., Goulmamine*, 2015 WL 5920009, at * 3-4 (E.D. Va. 2015) ("the question of whether a defendant has lost or abused a privilege is a question of fact"); *Harrington v. Sprint Nextel Corp.*, 2008 WL 2228524, at * 6 (E.D. Va. 2008) ("[T]he question whether a defendant was actuated by malice, and has abused the occasion and exceeded the privilege is a question of fact for a jury" rather than one for the Court to determine") (quotations omitted); *id., Cashion v. Smith*, 286 Va. 327, 338, 749 S.E.2d 526 (2013) ("the issue of whether there was malice is a question of fact for the jury, and a showing of

pre-existing personal spite or ill will is only one of several ways in which a privilege can be lost"); *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134-135, 575 S.E.2d 858 (2003) (same); *Larimore v. Blaylock*, 259 Va. 568, 575-576, 528 S.E.2d 119 (2000) ("The rule of qualified privilege that we adopted years ago continues to encourage open communications on matters of employment while not shielding the use of such communications for an individual's personal malicious purposes").

**6. *Insulting Words***

Section 8.01-45 of the Virginia Code (1950), as amended, provides that "[a]ll[10] words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace."

> "The design of the statute is to prevent breaches of the peace, to discourage offensive and excessive freedom in the use of that unruly member, the tongue, to inflict punishment therefor, and by subjecting those who are so hasty of temper and inconsiderate of the feelings of others as to insult them to such actual and punitive damages as may be awarded by a jury … The statute is peculiar, as we believe, to Virginia and Mississippi, and, while most of the rules applicable to common-law slander are now applicable to this action, the rule requiring publication is not applicable."

*Hines v. Gravins*, 136 Va. 313, 112 S.E. 869, 871 (1926) (defendant's statements implied that plaintiff was a "crooked and dishonest person" – demurrer to insulting words claim was properly overruled); *see id. Wright v. Colfield*, 146 Va. 637, 131 S.E. 787, 788 (1926) (The purpose of the statute is to "prevent the use of language by one towards

[10] The word "all" is a term of exceptional breadth. *Turner v. Reed*, 258 Va. 406, 409, 518 S.E.2d 832 (1999) ("The word 'all' means: 'The whole number or sum [when] used collectively with a plural noun or pronoun expressing an aggregate.' Black's Law Dictionary 74 (6th ed. 1990)). The Virginia Supreme Court has not minced words: "A more comprehensive word than 'all' cannot be found in the English language". *Moore v. Va. Fire & Marine Ins. Co.*, 69 Va. (28 Gratt.) 508, 516 (1877). "All words", thus, includes both written and verbal words.

another likely to bring about a personal encounter" – statement that "I would like to slap such cattle as you in the face" held actionable).

"Whether or not the words used are insulting is a jury question, depending on whether from 'their usual construction and common acceptation' they may be 'construed as insults, and tend to violence and breach of the peace.' The motive which actuated the person using the words is not material, except upon the questions of malice and the measure of damages." *Cook v. Patterson Drug Co.*, 185 Va. 516, 521, 39 S.E.2d 304 (1946); *compare Jennings v. Jones*, 2005 WL 4827429, at * 1, 3 (Petersburg Cir. 2005) ("insinuating to the Plaintiffs either the incompetent or illegal performance of their duties, were such as may have provoked reasonable persons to breaches of the peace, and the Plaintiffs have so alleged in their Motions for Judgment" … [T]he alleged statements are actionable under the 'fighting words' statute, Va. Code § 8.01-45. They meet all the requirements of common-law defamation, and it is possible that a reasonable jury might find that the statements were such as might fairly be expected by reasonable people to tend towards violence or a breach of the peace.").

Attached hereto as *Exhibit "A"* is a Summary of reported decisions over the last 100+ years, in which the Virginia Supreme Court, Virginia Circuit Courts, and Virginia Federal Courts have affirmed and reversed Jury verdicts and overruled motions to dismiss insulting words claims. Jury verdicts were upheld in cases where defendants made much, much ***less*** egregious statements, than Baxter, Whittington, Costello and Kyles made in this case. Measured by the controlling cases cited, there is no question that Plaintiffs have stated viable insulting words claims upon which relief can be granted.

**D.** ***COUNT VI – Malicious Prosecution***

Mr. Belisle has alleged facts to support each and every element of a common law claim of malicious prosecution against both Kyles and Costello. [*Complaint, ¶¶ 2(f), 72, 76-80, 110-115*].

He has alleged that a prosecution for obstruction of justice was instigated by Kyles and Costello without probable cause, that it was malicious,[11] and that the proceeding terminated in a manner not unfavorable.

Once again, whether there was probable cause is a question of fact for the Jury. It cannot be resolved without evidence and against specific allegations that there was ***not*** probable cause. *See, e.g., Niese v. Klos,* 216 Va. 701, 704, 222 S.E.2d 798 (1976) ("There is no merit in defendant's assertion on demurrer that issuance of the arrest warrant permitted the inference that probable cause had been judicially determined so as to bar the malicious prosecution action. In Clinchfield Coal Corp. v. Redd, supra, 123 Va. at 443, 96 S.E. at 843, we rejected a similar contention. There we said that issuance of the warrant does not conclusively prove probable cause because of the very existence of the law permitting malicious prosecution actions, and the question whether issuance of the warrant is prima facie evidence is immaterial because 'the burden is always on the plaintiff to negative the existence' of probable cause.").

---

[11] Indeed, Pierre's conduct occurred *after* the General District Court case concluded, so how could he be obstructing justice? [*Complaint, ¶ 79*]. In his brief, Kyles claims that he was a "prosecution witness" in an "ongoing criminal matter" at the time of the incident on September 18, 2017. [*ECF No. 11, p. 14*]. This argument must be rejected. It disregards the well-plead complaint and, in any case, it is false. The fact that Mrs. Belisle appealed did not make Kyles a "prosecution witness"

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully move the Court to deny the Defendants' motions to dismiss.

DATED: August 20, 2018

FRANCES J. BELISLE
PIERRE BELISLE

By: *__/s/Steven S. Biss__*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2018 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the parties and all interested persons receiving notices via CM/ECF.

By: *<u>/s/Steven S. Biss</u>*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiffs*