FRANCES J. BELISLE,

    **Plaintiff,**

v.                           **Civil Action No. 3:18cv514**

LAURA BAXTER, *et al.,*

    **Defendants.**

### MEMORANDUM OPINION

This matter comes before the Court on two motions: (1) Defendants Laura Baxter,[1] Michael Whittington, and Lawrence Costello's (collectively with Baxter and Whittington, the "Officer Defendants") Motion to Dismiss (the "Officer Defendants' Motion to Dismiss"), (ECF No. 8); and, (2) Defendant Donald Kyles's Motion to Dismiss (the "Kyles's Motion to Dismiss"), (ECF No. 10). Plaintiffs Frances Belisle and Pierre Belisle[2] (collectively with Frances, "Plaintiffs") responded in a single filing to both the Officer Defendants' Motion to Dismiss and the Kyles's Motion to Dismiss. (ECF No. 12.) The Officer Defendants and Kyles replied. (ECF Nos. 15, 16).

The Court dispensed with oral argument because the materials before it adequately presented the facts and legal contentions, and argument would not aid the decisional process.

---

[1] The Officer Defendants assert in both their Notice of Removal, (ECF No. 1), and in the Officer Defendants' Motion to Dismiss, that Plaintiffs wrongly identified Laura Baxter as Angela Baxter. In response to the Motion to Dismiss, Plaintiffs state that "Plaintiffs' Complaint incorrectly identifies Laura Baxter as 'Angela' Baxter. This is a misnomer. Plaintiffs intend to file a motion to amend and correct the misnomer. Counsel for Defendant Baxter (Mr. Capps) indicates that he will consent to the motion after having an opportunity to review it." (Resp. Mots. Dismiss 1 n.1, ECF No. 12.) Plaintiffs did not file a motion to amend. Based on the parties' agreement and deeming it proper to do so, the Court corrects the misnomer above.

[2] For ease of reference, because Plaintiffs share the same last name, the Court refers to Plaintiffs by their first name.

The Court exercises jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331[3] and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.[4]

## I. Factual Background[5]

Plaintiffs bring this eight-count Complaint seeking both compensatory and punitive damages, pre-judgement and post-judgment interest, attorneys' fees, and costs, for events occurring in March and September 2017 that began when Frances interacted with members of the City of Hopewell Police Department (the "Hopewell PD") at a school function held at Hopewell High School. Frances interacted primarily with Baxter and Whittington and the exchange resulted in Frances's arrest for disorderly conduct.[6] Frances brings claims against both Baxter and Whittington.

After Frances's trial for disorderly conduct in the City of Hopewell General District Court—Criminal Division (the "Hopewell General District Court"), Pierre had a separate interaction with Kyles, a school bus driver who testified against Frances at trial. This interaction

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). Frances alleges, pursuant to 42 U.S.C. § 1983, that Baxter and Whittington violated her Fourth and Fourteenth Amendment rights.

[4] The Court exercises supplemental jurisdiction over Plaintiffs' state-law malicious prosecution, false imprisonment, defamation, and insulting words claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

[5] For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

[6] The Commonwealth's Attorney eventually dismissed this charge by *nolle prosequi*.

led to Pierre's arrest for obstruction of justice.[7] Pierre brings claims against Kyles and Costello, the Hopewell PD officer who issued the warrant for Pierre's arrest. Frances also brings a claim against Kyles and Costello.

## A. Factual Background Pertaining to Frances's Allegations

Baxter arrested Frances for disorderly conduct following an interaction between Frances and members of the Hopewell PD. The Hopewell General District Court later convicted Frances of this charge and she appealed her conviction to the City of Hopewell Circuit Court. Before Frances's trial on appeal, the Commonwealth Attorney dismissed the charge by *nolle prosequi*. Frances brings her six counts based on events that occurred between the time leading up to her arrest and the eventual dismissal of her charge.

### 1. Allegations Leading to Frances's Arrest

On March 25, 2017, Hopewell City Public Schools held an event at the Hopewell High School in which Plaintiffs' minor daughter participated. The Hopewell City Public School Board asked the Hopewell PD to assist with "the event to ensure the safety and welfare of the attending public." (Not. Removal Ex. A "Complaint" ¶ 13, ECF No. 1-1.) In doing so, the Hopewell PD established an entry point[8] "inside the [h]igh [s]chool to block" entrance into the hallway. (*Id.* ¶ 14.) "The police randomly allowed some to enter the hallway through the [entry point]. Others were stopped and denied entry." (*Id.* ¶ 15.)

On the morning of the event, Frances brought both her daughters to the Hopewell High School and planned to escort her younger daughter to the classroom where the instructor had told

---

[7] The Commonwealth's Attorney dismissed this charge before trial.

[8] Plaintiffs describe the entry point as a "barricade consist[ing] of tables with a narrow opening between them" that prevented visitors from walking down the hallway without permission. (Compl. ¶ 14.)

the students to meet.[9] Officers working at the hallway entrance initially told Frances that she could not accompany her daughter to the classroom, but eventually allowed her to do so.

Upon returning to the hallway entrance, Frances noticed that Hopewell PD officers, specifically Baxter, had stopped another mother from escorting her child. Plaintiffs claim that Frances told Baxter "that 8 and 9-year-old children 'can't be unsupervised and out of the line of sight of their parents. It is both a safety and liability issue.'" (*Id.* ¶ 19 (quoting Frances).) Frances then "opined that either parents be allowed to escort their children to a specific classroom or, in the alternative, that one of the many officers[] present escort the children to their required location." (*Id.*) Plaintiffs allege that "Baxter told Fran[ces] that no parents were allowed in the hallway and it was not her 'job to escort children.'" (*Id.* (quoting without attribution, presumably Baxter).)

Frances "countered that safety of the children was exactly Baxter's job and the main reason she was in the [h]igh [s]chool for this event was student safety." (*Id.* ¶ 20.) Baxter then purportedly "demanded that Fran[ces] leave the [s]chool or be arrested." (*Id.*) According to Plaintiffs, Frances "calmly demanded to know upon what grounds she was being evicted and, immediately upon asking that question, Baxter arrested Fran[ces], with handcuffs."[10] (*Id.* ¶ 21.)

---

[9] Frances states that she planned to escort her daughter to the classroom because she "did not want her 9-year[-]old child to be alone in a [h]igh [s]chool open to the public and full of strangers." (Compl. ¶ 12.)

[10] The Officer Defendants dispute this characterization of the events leading to Frances's arrest. For example, in describing the incident between Frances and Baxter, the Officer Defendants state: when Frances returned to the entry point, she "interjected herself in Baxter's conversation with another parent." (Mem. Supp. Officer Defs.' Mot. Dismiss 8; ECF No. 9.) She "continued to argue with Baxter and demanded that parents be allowed behind the" entry point. (*Id.*) "She proceeded to tell Baxter what Baxter should be doing as part of her job, and refused to follow Baxter's orders." (*Id.*) Finally, "[d]espite Baxter's directive, [Frances] . . . continued to engage Baxter and was arrested." (*Id.*)

4

Frances alleges that "Baxter never informed [her] . . . that she (Baxter) believed that Fran[ces]'s conduct was unlawful." (*Id.* ¶ 22.) Frances avers that the exchange between herself and Baxter, which "lasted less than one minute" left her "profoundly insulted, embarrassed, humiliated, shocked[,] and dismayed."[11] (*Id.* ¶¶ 23, 25.)

### 2. Allegations Arising After Frances's Arrest

Following her arrest, until Baxter identified herself as an attorney,[12] Baxter allegedly "refused to tell" Frances why Baxter arrested her, despite Frances's repeated questions. (*Id.* ¶ 27.) Then, "in front of many people," Baxter said that she arrested Frances "for 'disorderly conduct in a public place.'"[13] (*Id.* (quoting without attribution, presumably Baxter).) However, "Baxter refused to tell Fran[ces] what Fran[ces] had done that supposedly constituted 'disorderly conduct.[14]'" (*Id.* (quoting without attribution).)

---

The Court will not resolve this factual dispute when deciding the Officer Defendants' Motion to Dismiss. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts."). The Court must give all reasonable factual inferences to Frances at this procedural posture. *See Kensington*, 684 F.3d at 467 (finding that when deciding a Rule 12(b)(6) motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)).

[11] Frances also states that she "was not intoxicated. . . . never raised her voice. . . . never threatened Baxter or anyone else. . . . [and] never approached Baxter or made any gestures towards her." (Compl. ¶ 24.) Frances continues by saying that she "did not incite Baxter or anyone else to violence. . . . [Specifically, she] did nothing to disrupt the [school] event and, indeed, the event was never disrupted." (*Id.*)

[12] In the Complaint Frances identifies herself as an attorney. She also states that "[u]ntil she was falsely accused of a crime, arrested and defamed in March 2017, [she] . . . enjoyed an outstanding and untarnished reputation. . . . [which] was integral to her business and profession." (Compl. ¶ 3.)

[13] Plaintiffs allege that "Baxter exercised her power irresponsibly," because "[i]n truth, Fran[ces]'s simple questions irritated Baxter and Baxter precipitously retaliated by arresting Fran[ces] and depriving her of her constitutional rights." (Compl. ¶ 32.)

After Baxter placed Frances in handcuffs, Frances "went limp." (*Id.* ¶ 34.) Plaintiffs contend that Baxter and Officer Michael Redavid[15] "dragged Fran[ces] . . . outside like a common criminal while Fran[ces] cried out for Pierre."[16] (*Id.*) Frances adds that "Costello was also present" during this part of the interaction. (*Id.*)

After Baxter, Redavid, and Frances arrived outside of the high school, "Baxter told [Hopewell Police Captain] Whittington that she was taking Fran[ces] to jail." (*Id.*) Whittington, however, "told Baxter to take Fran[ces to] the principal's office. Baxter said 'no' and argued with Whittington for about a minute." (*Id.* (quoting Baxter).) Whittington ultimately ordered Officer Redavid to take Frances to the principal's office. Frances alleges that the police officers[17] kept her in handcuffs for thirty minutes while holding her in the principal's office. She claims that due to her arrest, her eleven-year-old daughter was left unaccompanied during this time.

Pierre alleges that after witnessing the officers take Frances outside of the high school, he learned that Baxter and Whittington had taken Frances to the principal's office. Pierre went to the office. Pierre avers that he could see Frances in the office, still in handcuffs. Plaintiffs state

---

[14] Plaintiffs contend that Baxter "had no probable cause to arrest Fran[ces] for disorderly conduct in a public place." (Compl. ¶ 30.) "Baxter did not act in an objectively reasonable manner. Any reasonable person would have known that, by arresting a person without cause to do so, they were violating the constitutional rights of that person." (*Id.* ¶ 31.) Frances also states that "Baxter abused her authority and acted with reckless disregard for the truth, in doing so, she violated Fran[ces]'s well-established constitutional rights." (*Id.* ¶ 32.) Throughout the entire exchange, Frances alleges that she "was never given a Miranda warning." (*Id.* ¶ 37.)

[15] Plaintiffs did not name Officer Redavid as a defendant.

[16] Frances alleges that "[b]ecause of the excessive force employed by Baxter, Redavid and Costello, Fran[ces] suffered bruises on her arms and wrists." (Compl. ¶ 35.) Frances includes in the Complaint a photograph showing these bruises.

[17] Plaintiffs state that five police officers stayed with Frances in the principal's office, but they do not specify the identity of these officers.

6

that "[a]fter almost twenty (20) minutes," Whittington entered the main office. (*Id.* ¶ 41.)

"Pierre asked him why Fran[ces] was still hand-cuffed since the situation had been under control

for a long time. Whittington told Pierre that Fran[ces] was still handcuffed because she was 'still

under arrest.'" (*Id.* (quoting Whittington).)

### 3.    Allegations Following Frances's Release

After talking to Pierre, Whittington presumably returned to the conference room where

the officers held Frances. When Whittington emerged from the conference room, he told Pierre

that Frances "was going to be released on a summons and that she and Pierre would be able to

attend their 9-year[-]old's pre-performance." (*Id.* ¶ 42.) "Pierre advised Whittington to inform

his Chief to save some money from the budget because Pierre was 'going to sue your (meaning

[the] Hopewell [Police Department]) a** off.'" (*Id.* (quoting Pierre).) Pierre alleges that

Whittington then "became highly disrespectful, took a step back[,] and nervously tried to activate

his 'bodycam,' asking Pierre to wait a minute because he needed to record Pierre's 'threat.'" (*Id.*

(quoting without attribution, presumably Whittington).)

After the officers released Frances, "Baxter and Whittington . . . refused to disclose what

was the 'disorderly conduct' that Fran[ces] had displayed to justify her arrest. Whittington told

Fran[ces] that he did not have to tell her anything and that she would be informed in Court about

these details." (*Id.* ¶ 43.)

### 4.    Publication of the Interaction Between Frances and Members of the Hopewell PD

On March 27, 2017, two days after the event described above, "the Petersburg *Progress-*

*Index* published an online article entitled 'Hopewell parent handcuffed after incident at Fine Arts

Festival.'"[18] (*Id.* ¶ 44.) The article said, "Hopewell Police Capt. Mike Whittington said that he understood that [Frances] had 'started getting disorderly with the officers' and yelling while they were engaged in closing off restricted areas. However, he noted that he had not personally witnessed the incident and that officers would have to review the body camera footage[19] of the incident." (*Id.* ¶ 45 (quoting Whittington).)

On March 29, 2017, four days after the interaction between Frances and members of the Hopewell PD and two days after the *Progress-Index* article, "WTVR.com published an online article entitled 'Chesterfield mom arrested at school event says "excessive force" used.'"[20] (*Id.* ¶ 47.) The WTVR.com article quoted Hopewell PD Chief, John Koehane,[21] as saying that he

> had heard from Baxter and Whittington . . . [that] Fran[ces] was very loud, very aggressive[,] and belligerent to the officers. They gave her several opportunities to leave the area and to calm down and that just didn't happen. If she just listened to the Officers, the arrest would have never occurred.

(*Id.* ¶ 49.)

### 5.    Frances's Trial in the City of Hopewell General District Court

Approximately six months after Frances's arrest for disorderly conduct, the Hopewell General District Court heard Frances's case. Kyles, a school bus driver, testified during Frances's trial that "Fran[ces] was belligerent, loud[,] and used curse[] words in the direction of the police officers involved." (*Id.* ¶ 58.) He also testified that "Fran[ces] and Pierre's daughter,

---

[18] Although Plaintiffs quote the *Progress-Index* article, no party attaches it as an exhibit.

[19] Although Plaintiffs allege that the exchange between Frances and Baxter "was captured on videotape and on bodycams worn by Baxter and Baxter's fellow officers," (Compl. ¶ 33), and the *Progress-Index* article references body-camera footage, "neither Baxter nor Whittington nor any other Hopewell police officer ever produced the exculpatory body camera video," (*id.* ¶ 46).

[20] As with the *Progress-Index* article, no party attaches the WTVR.com article as an exhibit.

[21] Plaintiffs did not name Chief Koehane as a defendant.

who witnessed Fran[ces]'s . . . arrest, had rolled her[] eyes and stated that she was embarrassed by Fran[ces]'s actions." (*Id.* ¶ 59.) Baxter also testified during Frances's trial. According to Plaintiffs, Baxter's testimony was in one part credible: when Baxter testified that Frances did not use curse words and "that Kyles was, in fact, lying to the Court," which contradicted Kyles's testimony. (*Id.* ¶ 60.) Otherwise, Plaintiffs challenge Baxter's testimony.

The Hopewell General District Court convicted Frances of disorderly conduct.[22] Frances appealed her case to the Hopewell Circuit Court.[23] Nearly three months later, "the Commonwealth dismissed the charge against Fran[ces] by nolle prosequi." (*Id.* ¶ 83.)

### B.  Factual Background Pertaining to Pierre's Allegations

Pierre's claims stem from an interaction with Kyles at the Hopewell High School after Frances's trial in the Hopewell General District Court. The afternoon after Frances's trial, Pierre, a member of the Hopewell High School staff, confronted Kyles, a school bus driver for

---

[22] In the Complaint, Plaintiffs do not discuss the disposition of the trial before the Hopewell General District Court. Because the Officer Defendants attached the Hopewell PD Uniform Summons completed for Frances's charge and Plaintiffs do not dispute its authenticity, the Court includes this fact to present an accurate timeline of the events at issue. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted) ("'[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed.'").

However, that the Supreme Court of Virginia has held that when a person convicted in General District Court exercises his or her right to appeal his or her conviction to the Circuit Court, the person's General District Court conviction cannot later be admitted into evidence. *Baker v. Elmendorf*, 628 S.E.2d 358, 361 (Va. 2006) (stating that "an appeal from the court not of record to the court of record 'annuls the judgment of the inferior tribunal as completely as if there had been no previous trial.'" (quoting *Gaskill v. Commonwealth*, 144 S.E.2d 293, 296 (Va. 1965))). Because Frances appealed her case, Frances's conviction in Hopewell General District Court does not affect the Court's analysis.

[23] As with the Hopewell General District Court case, Plaintiffs do not discuss how Frances's case came to the Hopewell Circuit Court. Because Kyles attached the Notice of Appeal-Criminal completed for Frances's case and Plaintiffs do not dispute its authenticity, the Court includes this information as background. *See Witthohn*, 164 F. App'x at 396–97.

Hopewell High School, while Kyles sat behind the wheel of a bus parked outside of the

Hopewell High School. Standing in the open doorway of the bus, Pierre had the following

exchange with Kyles:

> Pierre: "You should be ashamed of yourself. You're a liar."
>
> Kyles: ("in a defiant tone") "I'm proud of myself."
>
> Pierre: "You are proud to be a liar?"
>
> Kyles: "Don't threaten me."
>
> Pierre: "I'm not threatening you, I'm telling you that you are a liar."
>
> Kyles: ([S]tarted to gesticulate and told Pierre that if he did not leave and stop[] talking to him[,] he (Kyles) would) "make a complaint to [Hopewell High School Superintendent Dr. Melody] Hackney.'"
>
> Pierre: "Go ahead, please go ahead."
>
> Kyles: "I feel threatened." ("[A]nd waving his right hand upward like a duster, added") "[S]tep away from my bus."
>
> Pierre: "[Y]ou had your 15 minutes of glory under the sun, but you are a low life liar."

(Compl. ¶¶ 63–68 (quoting Pierre and Kyles as noted).)

Both Pierre and Kyles reported the interaction to their supervisors. Kyles also filed a

complaint with the Hopewell PD. That evening, Hopewell City Public Schools "suspended

[Pierre] with pay until further notice." (*Id.* ¶ 71.)

"Based on Kyles'[s] complaint, Costello sought and obtained a warrant for Pierre's

arrest[] on a charge of 'obstruction of justice.'"[24] (*Id.* ¶ 72.) Pierre's legal counsel then called

the Chesterfield County Police (the "Chesterfield PD") and informed them that "Pierre would

turn himself in voluntarily to the Hopewell [PD] with his attorney escorting him on Monday,

September 25, 2017." (*Id.* ¶ 73.) On September 22, 2017, four days after the interaction

between Pierre and Kyles (and three days before Pierre planned to turn himself in), officers from

---

[24] Plaintiffs allege that "[t]he allegations in [the] warrant of arrest for obstruction of justice are false." (Compl. ¶ 77.) Pierre alleges that Kyles's "motive was reprisal for Pierre pointing out Kyles'[s] perjury." (*Id.* ¶ 80.)

the Chesterfield PD came to Pierre and Frances's home to arrest Pierre. Pierre contends that the Chesterfield PD did so at Costello's urging. Pierre was not home when the officers arrived, but Frances later informed him that the officers had visited. The next day, Saturday, September 23, 2017, Pierre turned himself in to the Chesterfield PD.

The Chesterfield PD transferred Pierre to the custody of Hopewell PD. The Hopewell PD detained Pierre and took him before a magistrate. The magistrate released Pierre on a recognizance bond, "the terms of [which] were such that he was prohibited from traveling outside the Commonwealth of Virginia during the pendency of his case."[25] (*Id.* ¶ 75.) The Commonwealth later dismissed the obstruction of justice charge against Pierre.

## II. Procedural Background

Frances and Pierre filed their eight-count Complaint in the Circuit Court for the County of Chesterfield (the "Chesterfield Circuit Court"). The Officer Defendants, with Kyles's consent, timely removed the case to this Court. In the Complaint, Plaintiffs allege:

| | |
|---|---|
| **Count I:** | Baxter and Whittington maliciously prosecuted Frances, in violation of 42 U.S.C. § 1983 (the "Federal Malicious Prosecution claim"); |
| **Count II:** | Baxter and Whittington maliciously prosecuted Frances, in violation of Virginia law (the "Virginia malicious prosecution claim"); |
| **Count III:** | Baxter and Whittington falsely imprisoned Frances, in violation of Virginia law; |
| **Count IV:** | Baxter and Whittington uttered defamatory per se words about Frances, in violation of Virginia law; |
| **Count V:** | Baxter and Whittington uttered insulting words about Frances, in violation of § 8.01-45 of the Virginia Code; |
| **Count VI:** | Costello and Kyles maliciously prosecuted Pierre, in violation of Virginia law; |
| **Count VII:** | Costello and Kyles uttered defamatory per se words about Frances and Pierre, in violation of Virginia law; and, |

---

[25] Plaintiffs allege that Pierre and Frances had to cancel a pre-existing anniversary trip due to these bond terms.

**Count VIII:**   Costello and Kyles uttered insulting words about Pierre, in violation of § 8.01-45 of the Virginia Code.

Frances and Pierre seek compensatory and punitive damages, pre-judgment and post-judgment interest, attorneys' fees, and costs.

The Officer Defendants filed, in this Court, their Motion to Dismiss. Kyles filed, in this Court, his Motion to Dismiss. Plaintiffs jointly responded to the two motions. The Officer Defendants and Kyles replied. The matter is now ripe for disposition.

### III.  Standard of Review:  A Rule 12(b)(6) Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and

12

requires "the reviewing court to draw on its judicial experience and common sense." *Francis*,

588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and

determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to

an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467

(finding that the court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of

the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of

the plaintiff" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)).

The Court addresses each count below.

### IV. Analysis: § 1983 Malicious Prosecution

In Count I, Frances claims that Baxter and Whittington maliciously prosecuted her, in

violation of 42 U.S.C. § 1983.[26] Because of the favorable reading afforded to Plaintiffs'

complaint at this stage of the litigation, the Court allows Frances to pursue this claim against

Baxter, but not against Whittington.

A.     **Plaintiffs Allege Sufficient Facts for Frances to State a Claim of Federal Malicious Prosecution Against Baxter**

"To succeed on a § 1983 claim, a plaintiff must prove by a preponderance of the evidence

that: (1) the defendant engaged in conduct which deprived plaintiff of a federal constitutional or

---

[26] Section 1983 is not itself a source of substantive rights, but rather provides a vehicle through which plaintiffs may challenge alleged deprivations of their constitutional rights. *See generally Carey v. Piphus*, 435 U.S. 247, 253 (1978). The Supreme Court of the United States has directed courts to use the common law of torts as a "starting point" for determining the contours of § 1983 claims for constitutional violations. *Carey*, 435 U.S. at 258; *see also Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 391 (4th Cir. 2014). Although the common law provides the starting point for a § 1983 analysis, "the ultimate question is always whether the plaintiff has alleged a constitutional violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1289 (10th Cir. 2004).

Plaintiffs allege that Frances "was subject to an unreasonable seizure of her person in violation of the Fourth Amendment and she was deprived of her liberty and/or property without Due Process of law" in violation of the Fourteenth Amendment. (Compl. ¶¶ 2(a), 86.)

statutory right, (2) that the defendant was acting under color of law, and (3) that the acts of that defendant proximately caused the plaintiff's damages." *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 747 (E.D. Va. 2016) (citing *Amato v. City of Richmond*, 875 F. Supp. 1124, 1132–33 (E.D. Va. 1994)).

Baxter arrested Frances for disorderly conduct, a Class 1 Misdemeanor, following an encounter between Frances and Baxter at the Hopewell High School. During the interaction, Frances confronted Baxter when Baxter would not allow another parent to accompany a student through a Hopewell PD entry point after Baxter had allowed Frances to do so. Frances argues that her arrest violated her Fourth and Fourteenth Amendment[27] rights and that § 1983 allows her to challenge the propriety of her arrest. The Officer Defendants challenge Frances's ability to sustain this cause of action. For the reasons stated below and at this procedural stage, the Court finds that Frances states a plausible claim for relief against Baxter in Count I.

> **1.    Frances Plausibly Establishes that Baxter Seized Her Pursuant to a Legal Process Not Supported by Probable Cause, Satisfying the First Prong of the § 1983 Analysis**

To meet the first prong of the § 1983 analysis in a Fourth Amendment claim, Frances must show that (a) Baxter seized her "pursuant to legal process that was not supported by probable cause and [(b)] that the criminal proceedings have terminated in [Frances's] favor."[28] *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014) (citing *Durham v. Horner*, 690 F.3d 183,

---

[27] Because the Fourteenth Amendment Due Process Clause incorporates the Fourth Amendment protections to be free from unreasonable seizures from state officers, *see Mapp v. Ohio*, 367 U.S. 643 (1961), the Court interprets Frances's § 1983 claim as alleging only violations of Frances's Fourth Amendment rights.

[28] Frances readily shows that the criminal proceedings terminated in her favor because the Commonwealth Attorney dismissed the charge against her. *See Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014). Neither party challenges Frances's ability to meet this element of the § 1983 analysis.

188 (4th Cir. 2012)). The Officer Defendants challenge Frances's ability to show that Baxter

seized her "pursuant to a legal process not supported by probable cause" because, they argue,

Baxter had probable cause to effectuate the arrest. *Id.* Although "[p]robable cause 'is not a high

bar,'" *Spivey v. Norris*, 731 Fed. App'x 171, 175 (4th Cir. 2018) (quoting *Dist. of Columbia v.

Wesby*, 138 S. Ct. 577, 586 (2018)), Frances pleads sufficient facts for her claim that Baxter

lacked probable cause to survive a motion to dismiss.

Probable cause sufficient to justify an arrest exists when the "facts and circumstances

within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing, in

the circumstances shown, that the suspect has committed, is committing, or is about to commit

an offense." *Spivey*, 731 Fed. App'x at 176 (quoting *United States v. Gray*, 137 F.3d 765, 769

(4th Cir. 1998)). "While probable cause requires more than bare suspicion, it requires less than

that evidence necessary to convict." *Id.* at 175–76 (quoting *Gray*, 137 F.3d at 769). Two factors

guide a court's probable cause inquiry: "the suspect's conduct as known to the officer, and the

contours of the offense thought to be committed by that conduct." *Id.* (quoting *Graham v.

Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)). In this case, the Court looks to Frances's conduct

as known to Baxter at the time of France's arrest, and to the contours of the Virginia disorderly

conduct statute.

Plaintiffs claim that throughout the interaction between Frances and Baxter, which

"lasted less than one minute," (Compl. ¶ 25), Frances

> was not intoxicated. . . . never raised her voice. . . . never threatened Baxter or
> anyone else. . . . never approached Baxter or made any gestures towards her. . . .
> did not incite Baxter or anyone else to violence. . . . did nothing to disrupt the
> [school] event and, indeed, the event was never disrupted[,]

(*id.* ¶ 24). Rather, Frances states that after Baxter "demanded that Fran[ces] leave the [s]chool,"

(*id.* ¶ 20), "Fran[ces] calmly demanded to know upon what grounds she was being evicted and, immediately upon asking that question, Baxter arrested Fran[ces],"[29] (*id.* ¶ 21).

> In Virginia, it is a Class 1 Misdemeanor
>
> if, with the intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof. . . [she or] he . . . [w]illfully or while intoxicated . . . disrupts the operation of any school or any activity conducted or sponsored by any school, if the disruption . . . prevents or interferes with the orderly conduct of the operation or activity or . . . has a direct tendency to cause acts of violence by the person . . . at whom, individually, the disruption is directed.

VA. CODE ANN. § 18.2-415(C).

Based on these allegations and the contours of the Virginia disorderly conduct statute, the Court permits Frances, for purposes of a motion to dismiss, to maintain her § 1983 malicious prosecution claim against Baxter. In Virginia a person violates the disorderly conduct statute when she or he "disrupts the operation of any school or any activity conducted or sponsored by the school." VA. CODE ANN. § 18.2-415(C). Plaintiffs allege that the encounter between Frances and Baxter transpired in less than one minute and that "the [school] event was never disrupted," (Compl. ¶ 24). At this early stage, taking as true the factual allegations and drawing all reasonable inferences in Frances's favor, Frances alleges facts showing that she plausibly did not violate Virginia's disorderly conduct statute. She also demonstrates, albeit marginally, that the facts and circumstances within Baxter's knowledge did not suffice to support probable cause for her arrest. Because Frances may show that Baxter seized Frances without probable cause, she plausibly satisfies the first prong of the § 1983 analysis.

---

[29] As noted above, the Officer Defendants contest France's characterization of Baxter's knowledge at the time of the arrest. *See supra* note 10. In deciding the Officer Defendants' Motion to Dismiss, the Court will not resolve this factual dispute. *See Republican Party of N.C.*, 980 F.3d at 952. The Court must give all reasonable factual inferences to Frances at this procedural posture. *See Kensington*, 684 F.3d at 467.

**2.    Frances Sufficiently Alleges that Baxter Hid Evidence of Frances's Innocence, So Baxter's Actions Constitute the Proximate Cause of Frances's Arrest, Meeting the Third Prong of the § 1983 Analysis**

Having found that Frances pleads minimally sufficient factual allegations to satisfy the first prong of the § 1983 analysis and with the parties conceding that Baxter acted under color of law,[30] the Court turns to the third prong of that test: whether Baxter's actions proximately caused Frances's arrest. *See Daniczek*, 156 F. Supp. 3d at 747. Frances also meets this prong of the § 1983 analysis for purposes of this motion to dismiss.

An officer may avoid liability for malicious prosecution by showing that the "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) . . . constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). The actions of the independent decision-makers will not insulate the officer from liability, however, if an officer "present[s] false evidence, hide[s] evidence of innocence, or unduly pressure[s] a prosecutor into pressing charges." *Copenny v. City of Hopewell*, 7 F. Supp. 3d 635, 640 (E.D. Va. 2014) (citing *Evans*, 703 F.3d at 647–48). "In these circumstances, an officer can still be liable for a wrongful prosecution, even though a prosecutor or grand jury makes the final decision to prosecute." *Id.* (citing *Willis v. Blevins*, 966 F. Supp. 2d 646, 653–54 (E.D. Va. 2013)).

In the Complaint, Plaintiffs allege that "[i]n procuring Fran[ces']s arrest, Baxter and Whittington intentionally falsified evidence and ignored and/or covered-up the CCTV and bodycam videotapes." (Compl. ¶ 90.) Standing alone, the Court would not give weight to this conclusory allegation. But in support of this serious allegation, Plaintiffs aver that "[t]he

---

[30] The Officer Defendants do not challenge Frances's ability to meet this second prong of the § 1983 analysis. *See Daniczek*, 156 F. Supp. 3d at 747.

incident [between Frances and Baxter] was captured on [the school's closed circuit television] . . . and on bodycams worn by Baxter and Baxter's fellow officers. The videotapes demonstrate that there was no probable cause and that Baxter's conduct was objectively unreasonable." (*Id.* ¶ 33.) Plaintiffs also contend that Whittington's statements to the *Progress-Index* confirm that video evidence existed. But Plaintiffs aver that they have never received the video recordings: "neither Baxter nor Whittington nor any other Hopewell police officer ever produced the exculpatory body camera video." (*Id.* ¶¶ 45–46.) Seemingly, the videos might prove the truth or falsity of both sides' positions.

Whether any video evidence was withheld, destroyed, lost, faulty, or nonexistent is a question to be answered later in litigation. But drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs sufficiently plead facts to show that Baxter potentially "hid evidence of innocence" sufficient to overcome the superseding nature of the Commonwealth Attorney's decision to prosecute Frances. *Copenny*, 7 F. Supp. 3d at 640. Because Baxter's actions, as alleged, stand as both the actual and proximate cause of Frances's allegedly unlawful seizure, Plaintiffs plausibly satisfy the third and final prong of the § 1983 analysis. Thus, Frances meets all prongs required to overcome the motion to dismiss her § 1983 claim in Count I against Baxter.

### 3. Qualified Immunity Does Not Protect Baxter's Conduct

Finally, Baxter contends that even if Frances successfully pleads a § 1983 malicious prosecution claim, Baxter cannot be held liable because qualified immunity protects her from

liability. At the motion to dismiss stage, the contentions discussed above overcome Baxter's claim of qualified immunity.[31]

Qualified immunity shields government officials from civil liability when they perform discretionary functions insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The qualified immunity defense ensures that "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

To overcome qualified immunity a plaintiff must meet a two-step inquiry:[32]

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.[33]

*Pearson*, 555 U.S. at 232 (internal citations omitted).

---

[31] Although affirmative defenses are generally not analyzed when deciding a Rule 12(b)(6) motion to dismiss, *Cretella v. Kuzminski*, No. 3:08cv109, 2008 WL 2227605, at *10 (E.D. Va. May 29, 2008), qualified immunity questions must be decided "at the earliest possible stage in litigation," *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (quoting *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009)).

[32] The Supreme Court has instructed that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[33] In assessing whether the rights allegedly violated were clearly established at the time of the officer's conduct, "the contours of the right must be sufficiently clear that a reasonable official would have understood that what [she or] he is doing violates that right." *Anderson*, 483 U.S. at 640. "The inquiry is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." *Wilson v. Kittoe*, 337 F.3d 392, 402 (4th Cir. 2003) (citing *Milstead v. Kibler*, 243 F.35 157, 161 (4th Cir. 2001)).

Relying solely on the well-pleaded factual allegations in the Complaint, and disregarding disputed facts, Plaintiffs plausibly plead sufficient facts to claim that Baxter arrested Frances without probable cause. Because a reasonable officer would have known that she or he could not arrest a person without a warrant or probable cause, Baxter cannot claim qualified immunity.[34] Therefore, the Court will deny the Officer Defendants' Motion to Dismiss as to Frances's § 1983 malicious prosecution claim in Count I against Baxter.

### B. Frances Does Not Allege Sufficient Facts to State a Claim of § 1983 Malicious Prosecution Against Whittington Because She Fails to Show that Whittington Caused Her Seizure

In Count I, Frances also raises a claim for § 1983 malicious prosecution against Whittington, who did not participate in her arrest. Although Frances alleges several actions taken by Whittington,[35] none of those actions legally constitute the proximate or actual cause of Frances's arrest and subsequent prosecution. For that reason, Frances cannot meet the third prong of the § 1983 malicious prosecution test as to Whittington. *See Daniczek*, 156 F. Supp. 3d at 747.

In sum, regarding the § 1983 malicious prosecution claims in Count I, the Court will deny the Officer Defendants' Motion to Dismiss as to Baxter and grant it as to Whittington.

---

[34] Baxter may, however, raise her qualified immunity defense again on a more developed factual record at summary judgment. *Ridpath v. Bd. Of Govs. Marshall Uni.*, 447 F.3d 292, 300 n.2 (citing *Behrens v. Pelletier*, 516 U.S. 299, 306–07 (1996)).

[35] Whittington first encountered Frances outside of the Hopewell High School, after Baxter had handcuffed Frances and escorted her outside. When Baxter told Whittington that she was taking Frances to jail, Whittington instructed Baxter to take Frances to the Hopewell High School principal's office. After the officers took Frances to the principal's office, Whittington made statements about Frances's arrest. Later, Whittington made statements regarding Frances's arrest to a newspaper, which published them.

## V. Analysis: Virginia Malicious Prosecution

Next, Plaintiffs bring two Virginia malicious prosecution claims. In Count II, Plaintiffs allege that Baxter and Whittington maliciously prosecuted Frances in violation of Virginia law. In Count VI, Plaintiffs allege that Costello and Kyles maliciously prosecuted Pierre in violation of Virginia law. Because malicious prosecution claims under Virginia law constitute a distinct cause of action with different elements, the Court addresses them independent of Plaintiffs' § 1983 malicious prosecution claims.

Based on the generous reading afforded to Plaintiffs' complaint on a motion to dismiss, the Virginia malicious prosecution claim in Count II may proceed against Baxter. The Court dismisses Count II against Whittington. Pierre's Virginia malicious prosecution claims in Count VI against Costello and Kyles fail as well.

### A. Plaintiffs Allege Sufficient Facts For Frances to State a Virginia Malicious Prosecution Claim Against Baxter

To state a claim for malicious prosecution under Virginia law, a plaintiff must allege that "the prosecution was (1) malicious,[36] (2) instituted by or with the cooperation of the [defendant],[37] (3) without probable cause, and (4) terminated in a manner not unfavorable to [the plaintiff]."[38] *O'Connor v. Tice*, 704 S.E.2d 572, 575 (Va. 2011).

---

[36] "In Virginia, 'malice' means 'any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.'" *Daniczek*, 156 F. Supp. 3d at 756 (quoting *Hudson v. Lanier*, 497 S.E.2d 471, 473 (Va. 1998)). Virginia courts may infer malice from a lack of probable cause. *Id.* (quoting *Bennett v. R & L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 521–24 (E.D. Va. 2010)).

[37] To meet this prong,

the Court must ascertain whether a defendant affirmatively, actively, and voluntarily took steps to instigate or to participate in the arrest of the

As with her § 1983 claim, the allegations in the Complaint just suffice to satisfy the elements of the Virginia malicious prosecution analysis as to Baxter. First, Plaintiffs' claim that Baxter arrested Frances with malice and without probable cause, read favorably, survives a motion to dismiss. For the reasons articulated above, at this early stage, the Plaintiffs sufficiently allege that Baxter may have arrested Frances without probable cause, which tends to show malice. *Daniczek*, 156 F. Supp. 3d at 756. Thus, Frances meets the first and third prongs of the Virginia malicious prosecution test.

Because Baxter arrested Frances, Frances also alleges sufficient facts to show that Baxter instituted her prosecution. *See id.* Frances, therefore, meets the second prong of the Virginia law malicious prosecution test.

Finally, no party challenges Frances's ability to meet the fourth prong of the test: that the criminal prosecution terminated in Frances's favor.[39] *O'Connor*, 704 S.E.2d at 575.

---

[plaintiff] . . . and whether the defendant exercised some level of control over the decision to have the plaintiff arrested.

*Daniczek*, 156 F. Supp. 3d at 763 (quoting *Bennett*, 744 F. Supp. 2d at 511–12).

[38] "Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia and the requirements for maintaining such actions are more stringent tha[n] those applied to other tort cases to ensure that criminal prosecutions are brought in appropriate cases without fear of reprisal by civil actions." *Lewis v. Kei*, 708 S.E.2d 884, 889–90 (Va. 2011) (citing *O'Connor v. Tice*, 704 S.E.2d 572, 575 (Va. 2011); *Ayyildiz v. Kidd*, 266 S.E.2d 108, 110–11 (Va. 1980)). "The reason for this disfavor is that criminal prosecutions are essential for maintaining an orderly society and people should not be discouraged from bringing such actions out of fear of subsequent civil proceedings against them." *O'Connor*, 704 S.E.2d at 575 (citing *Reilly v. Shepard*, 643 S.E.2d 216, 218–19 (Va. 2007)).

[39] Because the Commonwealth Attorney dismissed the charge against Frances by *nolle prosequi*, the prosecution "terminated in a manner not unfavorable to" Frances. *See O'Connor*, 704 S.E.2d at 575.

Accordingly, the Complaint minimally satisfies the federal pleading standards, so the Court will allow Frances's Virginia malicious prosecution claim in Count II to proceed against Baxter for purposes of this motion to dismiss.[40]

### B. Frances Fails to Allege Sufficient Facts to State a Virginia Malicious Prosecution Claim Against Whittington

As with her § 1983 malicious prosecution claim, Frances fails to state a claim for Virginia malicious prosecution against Whittington, unlike Baxter, because she fails to show that *Whittington* acted without probable cause.

Frances has failed to cite to any authority that establishes that *Whittington*, an officer not present at the scene of the arrest and who did not witness nor participate in the arrest,[41] can be held liable for any supposed lack of probable cause a fellow officer may have had in making an arrest. Because Frances cannot establish that *Whittington* instituted or cooperated with the *decision* to arrest without probable cause, Frances cannot maintain her Virginia malicious prosecution charge against him in Count II. *See O'Connor*, 704 S.E.2d at 575.

### C. Because Kyles Did Not Act with Malice in Making His Complaint, Pierre Cannot Meet the First Prong of the Virginia Malicious Prosecution Test and His Claim Against Kyles Fails

In Count VI, Pierre claims that Kyles maliciously prosecuted him in violation of Virginia law. Because the Complaint fails to state any facts from which the Court could infer that Kyle

---

[40] The Officer Defendants do not assert a qualified immunity defense for Baxter as to Count II.

[41] Whittington did not arrest Frances and was not at the scene when Baxter arrested Frances. Frances first encountered Whittington when Baxter took Frances outside of the Hopewell High School *after* the arrest. When approached, Whittington instructed Baxter to take Frances to the principal's officer rather than to jail.

acted with malice in making his complaint, Pierre cannot maintain his malicious prosecution claim against Kyles.[42]

In Virginia, the malice necessary to establish a malicious prosecution claim "means 'any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.'" *Daniczek*, 156 F. Supp. 3d at 756 (quoting *Hudson*, 497 S.E.2d at 473).

Even accepting the well-pleaded factual allegations as true and making all reasonable inferences in favor of Pierre, the Court cannot infer that Kyles acted with malice in making his complaint to the police.[43] By his own account, Pierre initiated the interaction with Kyles by walking up to and standing in the doorway of Kyles's bus while Kyles sat inside. Pierre told Kyles that he "should be ashamed of [himself]." (Compl. ¶ 63 (quoting Pierre).) During their conversation, Kyles repeatedly told Pierre that Kyles felt threatened by Pierre.[44] Based on Pierre's own retelling, the Court cannot deem plausible Pierre's conclusory allegation that Kyles's "motive was reprisal for Pierre pointing out Kyles'[s] perjury." (Compl. ¶ 80.) Nothing in the record could support an inference of malice, even at this early stage.[45]

---

[42] To state a claim for malicious prosecution under Virginia law, a plaintiff must allege that "the prosecution was (1) malicious, (2) instituted by or with the cooperation of the [defendant], (3) without probable cause, and (4) terminated in a manner not unfavorable to [the plaintiff]." *O'Connor*, 704 S.E.2d at 575.

[43] Following the confrontation between Pierre and Kyles, Kyles "made a complaint . . . to the Hopewell police that, *inter alia*, Pierre had 'threatened' Kyles." (Compl. ¶ 71.) Based on Kyles's complaint, Costello sought and obtained a warrant.

[44] *Plaintiffs* allege that during their exchange, Kyles told Pierre "[d]on't threaten me." (Compl. ¶ 65 (quoting Kyles).) Kyles later said, "I feel threatened." (*Id.* ¶ 67 (quoting Kyles).)

[45] A reasonable person could interpret Pierre's statements and actions as a threat. That person could then reasonably report such conduct to the police with "a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.'" *Daniczek*, 156 F. Supp. 3d at 756 (quoting *Hudson*, 497 S.E.2d at 473).

Because Pierre fails to allege any facts supporting his claim that Kyles made his complaint with malice,[46] Pierre falters on the first prong of the Virginia malicious prosecution analysis, meaning that Pierre cannot maintain his claim in Count VI against Kyles.

### D. Because Costello Acted with Probable Cause in Obtaining the Warrant for Pierre's Arrest, Pierre Fails to State a Virginia Malicious Prosecution Claim Against Costello

Also in Count VI of the Complaint, Pierre alleges that Costello, a member of the Hopewell PD, maliciously prosecuted Pierre in violation of Virginia law. This claim also founders.

In *Lewis v. Kei*, the Supreme Court of Virginia stated that "[p]olice may rely on the statement of a reported eyewitness as establishing probable cause to seek an arrest." 708 S.E.2d at 890 (citing *Reilly*, 643 S.E.2d at 218–19). A plaintiff cannot sustain a claim for Virginia malicious prosecution against an officer when the officer "had no reason to believe that [a citizen's] report was false." *Id.* Even when an officer does "not perform any further investigation prior to seeking the arrest warrant from the magistrate, this fact alone does not establish that [the officer] act[s] in bad faith or with malice." *Id.*

Under the standard articulated in *Lewis*, the Court cannot find that Costello acted without probable cause. Costello relied on Kyles's complaint as an eyewitness, meaning Costello could appropriately rely on this information to establish probable cause and seek a warrant for Pierre's

---

[46] Similarly, because Kyles's complaints to the Hopewell City Public Schools and to the Hopewell PD represent Kyles's characterization of Pierre's words during their exchange from his viewpoint, these statements constitute unactionable opinions. *See Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). Because Pierre cannot prove that Kyles made an actionable statement about Pierre, Pierre cannot maintain his defamation *per se* claim against Kyles in Count VII.

arrest.[47] *Id.* Because Plaintiffs cannot satisfy the third prong of the Virginia malicious prosecution analysis, Pierre's claim against Costello must fail. *Id.*

In sum, Frances may maintain her § 1983 malicious prosecution claim in Count I and Virginia malicious prosecution claim in Count II against Baxter, but Frances may not pursue these claims against Whittington. Pierre's Virginia malicious prosecution claim in Count VI against both Costello and Kyles do not survive the motion to dismiss. The Court turns now to Frances's false imprisonment allegations.

## VI. Analysis: False Imprisonment

In Count III, Plaintiffs allege that Baxter and Whittington falsely imprisoned Frances in violation of Virginia law. The allegations in the Complaint allow Frances's false imprisonment claim against Baxter to continue, but her claim against Whittington cannot.[48]

### A.  Legal Standard for False Imprisonment

"False imprisonment is restraint of one's liberty without any sufficient legal excuse therefor by word or acts which he fears to disregard, and neither malice, ill will, nor the slightest

---

[47] Pierre contends that, "there was no good faith basis for Costello or Kyles to believe that Pierre was guilty of any crime, including without limitation, obstruction of justice." (Compl. ¶ 110.) Pierre states that "[i]n procuring Pierre's arrest, Costello and Kyles misrepresented material facts and falsified evidence." (*Id.* ¶ 111.) Pierre does not allege any facts to support these conclusory allegations. The Court disregards them.

[48] As discussed, *supra* Sections IV.B and V.B., Frances fails to establish liability against *Whittington* based on *Baxter's* alleged failure to establish probable cause to arrest Frances. Plaintiffs' allegation that Whittington falsely imprisoned Frances must also fail for this reason: Frances does not claim that Whittington restrained her without sufficient legal process. *See Montgomery Ward & Co. v. Wickline*, 50 S.E.2d 387, 388–89 (Va. 1958). Baxter, not Whittington, arrested Frances. Whittington was not present during the arrest.

Just as Frances has not shown that Baxter's alleged lack of probable cause can be imputed to Whittington, Frances does not establish that Baxter's lack of legal process as to France's arrest can be imputed to Whittington for purposes of her false imprisonment claim against Whittington. Because Frances cannot meet this necessary element of her false imprisonment claim, the Court will dismiss Frances's false imprisonment claim in Count III against Whittington as well.

26

wrongful intention is necessary to constitute the offense." *Montgomery Ward & Co.*, 50 S.E.2d at 388–89 (quoting Burks' Pleading and Practice § 143 246 (3d ed.)). "The gist of the action is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Id.* (quoting *Kress & Co. v. Roberts*, 129 S.E. 244, 246 (Va. 1925)).

### B. Frances Pleads Sufficient Facts to State a Claim for False Imprisonment Against Baxter Because She Plausibly Claims that She May Not Have Committed a Crime in Baxter's Presence

Although Baxter did not need a warrant to arrest Frances, the arrest must be lawful to shield Baxter from liability for false imprisonment.[49] *DeChene v. Smallwood*, 311 S.E.2d 749, 751–52 (Va. 1984). The Virginia disorderly conduct statute, a Class 1 misdemeanor, requires a "disrupt[ion of] the operation of any school or any activity conducted or sponsored by a school." VA. CODE ANN. § 18.2-415(C). Viewing favorably the factual allegations in the Complaint, and disregarding the precipitously brought counter-facts from Defendants, the Court concludes that Frances plausibly alleges that Baxter may have unlawfully arrested Frances. *Id.*

As explained above, the Court accepts as true Frances's factual allegations in the Complaint, *Kensington*, 684 F.3d at 467, which state that Frances engaged in a calm conversation regarding the officers' conduct in unfairly allowing only some parents to escort their children to the classroom. Moreover, all parties appear to agree that Frances did not disrupt the school event.[50] With these facts undergirding her claim, Frances's claim that Baxter

---

[49] Under Virginia law, a police officer may arrest a person without a warrant for "any crime" committed "in the presence of the officer." VA. CODE ANN. § 19.2-81(B).

[50] For example, after Baxter threatened to arrest Frances, "Fran[ces] calmly demanded to know upon what ground she was being evicted." (Compl. ¶ 21.) She also states that she "was not intoxicated . . . never raised her voice . . . never threatened Baxter or anyone else . . . never approached Baxter or made any gestures towards her . . . [and] did not incite Baxter or anyone else to violence." (*Id.* ¶ 24.) Frances alleges that she "did nothing to disrupt the [Hopewell City Public School] event and, indeed, the event was never disrupted." (*Id.*) Rather, Frances claims that her "questions irritated Baxter and Baxter precipitously retaliated by arresting Fran[ces]."

27

unlawfully arrested Frances for disorderly conduct survives the motion to dismiss. Frances may pursue her false imprisonment claim against Baxter in Count II.

### VII. Analysis: Virginia Defamation *Per Se*[51]

Plaintiffs bring two defamation *per se* claims concerning various statements that are mentioned throughout the Complaint. In Count IV, Frances brings a claim of defamation *per se* against both Baxter and Whittington. Plaintiffs plead minimally sufficient facts to maintain both of these claims for purposes of a motion to dismiss. Similarly, in Count VII, Frances and Pierre

---

(*Id.* ¶ 32.) In furtherance of their allegation that Frances's interaction with Baxter did not disrupt the event, the Plaintiffs also allege that Whittington told Pierre that Frances "was going to be released on a summons and that she and Pierre would be able to attend their 9-year[-]old's pre-performance." (*Id.* ¶ 42.)

To the extent that the Officer Defendants dispute this characterization of the events, the Court will not decide this factual dispute when deciding the Officer Defendants' Motion to Dismiss. *See Kensington*, 684 F.3d at 467; *Republican Party of N.C.*, 980 F.2d at 952.

[51] In Virginia court, a plaintiff must plead the words spoken by the defendant *in haec verba*. *Fed. Land Bank of Balt. v. Birchfield*, 3 S.E.2d 405, 410 (1939) ("Good pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further—that is, it must purport to give the exact words.") But this case has properly been removed to federal court, meaning that federal pleading standards apply.

Under federal standards, a plaintiff may, but need not, state the exact words spoken by the defendant to maintain a cause of action for defamation. *See Doe v. Roe*, 295 F. Supp. 3d 664, 678 (E.D. Va. 2018) (finding that "Virginia pleading standards are not controlling [in a case filed in the Eastern District of Virginia], rather it is Rule 8 [of the Federal Rules of Civil Procedure], that governs the outcome of [a] motion to dismiss.") Rule 8(a) requires that a plaintiff set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

both bring defamation *per se* claims against Costello[52] and Kyles.[53] The Court will dismiss the claims against Kyles and Costello in Count VII entirely.

A.     **Legal Standard:  Virginia Defamation**

Virginia has identified certain statements "as defamation per se: (1) statements that impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished, . . . (3) statements that impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of duties of such an office or employment, and (4) statements that prejudice such person in his or her profession or trade. *Hatfill v. New York Times Co.*, 416 F.3d 320, 330–31 (4th Cir. 2005) (internal quotation marks and citations omitted).

A plaintiff seeking to recover for defamation *per se* in Virginia "must allege a publication of false information concerning the plaintiff that tends to defame the plaintiff's reputation." *Id.* at 330.  Such defamation allegations must show the "(1) publication of (2) an actionable statement with (3) the requisite intent."[54]  *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). Under the second prong of the analysis, the plaintiff "must prove by a preponderance of the

---

[52] Frances withdrew her claim of defamation *per se* against Costello in the Plaintiffs' Joint Response to the Motions to Dismiss.  Because Frances did not allege any statements Costello made about her, the Court will grant the Officer Defendants' Motion to Dismiss Count VII as to Frances's defamation *per se* claim against Costello.

[53] The Court previously found *supra* note 46 that Pierre cannot maintain his defamation *per se* claim in Count VII against Kyles.

[54] To establish the requisite intent, private individuals such as Frances and Pierre must make a showing that Baxter, Whittington, Costello, and Kyles "published the statement knowing that it was 'false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Sepmoree v. Bio-Medic. Applications of Va., Inc.*, No. 2:14CV141, 2014 WL 4444435, at *7 (E.D. Va. Sep. 08, 2014) (quoting *Gazette Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985)).

evidence that the allegedly defamatory statements are both false[55] and defamatory." *Cook,*

*Heyward, Lee, Hopper, & Feehan, P.C. v. Trump Va. Acquisitions LLC*, No. 3:12cv131, 2012

WL 1898616, at *3 (E.D. Va. May 23, 2012) (citing *Chapin*, 993 F.2d at 1092). For a statement

to be defamatory, "the allegedly defamatory words must carry 'the requisite defamatory "sting"

to one's reputation.'" *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507 (E.D. Va. 2016)

(quoting *Schaecher v. Bouffault*, 772 S.E.2d 589 (Va. 2015)). "Such language is of the kind that

'tends to injure one's reputation in the common estimation of mankind, to throw contumely,

shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or

which is calculated to render him infamous, odious, or ridiculous." *Id.* (quoting *Schaecher*, 772

S.E.2d 589).

### B. Frances States a Claim for Defamation *Per Se* Against Baxter As to Three of Baxter's Statements

Plaintiffs fail to identify any specific defamatory statements. But viewing the well-

pleaded factual allegations favorably, Plaintiffs allege eight instances in which Baxter made

statements about Frances, three of which meet the requirements of a defamation *per se* claim at

this early stage. Assuming Plaintiffs intended to base their defamation *per se* claim on all of

these statements, only statements 1, 2, and 3 plausibly undergird this claim. The eight statements

Plaintiffs claim that Baxter made include:

(1)     "Baxter demanded that Fran[ces] leave the [s]chool or be arrested." (Compl. ¶ 20.)

(2)     "Baxter told Whittington that she was taking Fran[ces] to jail." (*Id.* ¶ 34.)

---

[55] "At the Motion to Dismiss stage, the Court must accept as false any statements which the Complaint alleges to be false." *McCray v. Infused Sols., LLC*, No. 4:14cv158, 2017 WL 4111958, at *3 (E.D. Va. 2017) (citing *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).

(3)　　"Keohane republished false and defamatory statements of and concerning Fran[ces] that he . . . had heard from Baxter and Whittington, including: 'She . . . was very loud, very aggressive and belligerent to the officers. They gave her several opportunities to leave the area and to calm down and that just didn't happen. If she just listened to the Officers, the arrest would have never occurred." (*Id.* ¶ 49.)

(4)　　"Baxter told Fran[ces] that no parents were allowed in the hallway and it was not her 'job to escort children.'" (*Id.* ¶ 19 (quoting without attribution, presumably Baxter).)

(5)　　"Baxter said 'no' and argued with Whittington for about a minute." (*Id.* ¶ 34 (quoting Baxter).)

(6)　　"When Fran[ces] started to film the incident with her cell phone, Baxter initially ordered Fran[ces] to stop." (*Id.* ¶ 36.)

(7)　　"Baxter stated to Fran[ces] publicly and in front of many people that Fran[ces] was being arrested for 'disorderly conduct in a public place.'" (*Id.* ¶ 27 (quoting without attribution, presumably Baxter).)

(8)　　"In her testimony [at Frances's trial in Hopewell General District Court], Baxter flatly contradicted Kyles. Baxter confirmed that no curse words were used by Fran[ces] during the whole incident and that Kyles was, in fact, lying to the Court." (*Id.* ¶ 60.)

### 1.　Frances May Pursue Her Defamation *Per Se* Claim Against Baxter As To Statements 1 and 2

The Court finds, at least as to statements 1 and 2, that Frances's defamation *per se* claim against Baxter survives the Officer Defendants' Motion to Dismiss Count IV, albeit barely.

In statement 1, Baxter "demanded that Fran[ces] leave the [s]chool or be arrested." (Compl. ¶ 20.) As alleged, the alternative of an impending arrest establishes defamation *per se*: a statement that Frances "committed a crime" for which she could be removed from the Hopewell High School grounds. *See Hatfill*, 416 F.3d at 330.

Upon review, assuming the well-pleaded factual allegations as true and drawing reasonable inferences in favor of Frances, this statement plausibly meets each of the three requirements to allege defamation. First, the statement meets the publication element. *Jordan*,

31

612 S.E.2d at 206. The Court reasonably infers from the surrounding allegations that at least one other mother who had been told not to go through the barrier, and that parent's child, heard Baxter's statement about a possible impending arrest.

Second, under the favorable reading this Court gives to the Complaint on a motion to dismiss, Frances shows that Baxter's statement 1 satisfies both elements to establish an actionable statement: untrue and defamatory meaning. *Cook, Heyward, Lee, Hopper, & Feehan, P.C.*, 2012 WL 1898616 at \*3. Frances alleges that she did *not* evince disorderly conduct, claiming that she "was not intoxicated . . . never raised her voice . . . never threatened Baxter or anyone else . . . never approached Baxter or made any gestures towards her . . . did not incite Baxter or anyone else to violence [and] . . . did nothing to disrupt the [Hopewell City Public School] event."[56] (Compl. ¶ 24.) Importantly, to reinforce the fact that Frances can prove her calm conduct true, Frances alleges that "[t]he entire encounter between [her] and Baxter was captured on film by the High School's closed-circuit television system," (*id.* ¶ 26), and "on bodycams worn by Baxter and Baxter's fellow officers," (*id.* ¶ 33). Frances maintains that these videos "demonstrate that there was no probable cause and that Baxter's conduct was objectively unreasonable."[57] (*Id.*) Because this video evidence could determine the truth or falsity of Frances's contentions, the Court is constrained to allow Frances to engage in discovery regarding this issue. Viewing these allegations favorably, Plaintiffs allege adequate facts to show that Frances potentially did not commit a crime in Baxter's presence, plausibly meeting the

---

[56] Although the Officer Defendants dispute Frances's characterization of the interaction between Frances and Baxter, the Court will not resolve this dispute at this procedural posture. *Republican Party of N.C.*, 980 F.2d at 952.

[57] Moreover, Frances also alleges that Whittington later told the *Progress-Index* that he "would have to review the body camera footage of the incident." (Compl. ¶ 45.) Frances insists that no member of the Hopewell PD "ever produced the exculpatory body camera video." (*Id.* ¶ 46.)

requirement that the statement constitute an untrue statement. *See Cook, Heyward, Lee, Hopper, & Feehan, P.C.*, 2012 WL 1898616 at *3.

Next, to establish defamatory meaning to prove an actionable statement, Frances claims that Baxter's actions and statements harmed her "outstanding and untarnished reputation," as an attorney which "was integral to her business and profession." (Compl. ¶ 3.) While it does so with hesitation, the Court is willing to infer on this preliminary record that, because Baxter's statement may impute to Frances, an attorney, the commission of a crime, it meets defamatory meaning as defamation *per se*. *See Daniczek*, 156 F. Supp. 3d at 754.[58] Given the generous reading afforded Plaintiffs' Complaint when deciding the Officer Defendants' Motion to Dismiss, statement 1, therefore, plausibly satisfies the second prong of the defamation analysis: an actionable statement. *Jordan*, 612 S.E.2d at 206.

Finally, the same favorable analysis as to the falsity and defamatory meaning elements guide this Court's finding as to the third element of pleading defamation: requisite intent. *See id.* at 207. Frances's allegations, read favorably, that she did not act disorderly and that video evidence could prove so, plausibly assert that Baxter made the statement without "reasonable grounds for such belief." *Sepmoree*, 2014 WL 4444435 at *7.

---

[58] Given the significant factual differences between *Daniczek* and the case at bar, the Court is reticent to apply *Daniczek* even at this early stage. It seems unlikely that the *Daniczek* court's determination will guide the Court's analysis on a more developed factual record.

In *Daniczek*, a court in this division stated that "accusing an attorney of a crime also tends to impugn her *fitness* to practice law, which in turn prejudices her in the pursuit of her trade." 156 F. Supp. 3d at 754 (emphasis added) (citing *Carwile v. Richmond Newspapers*, 82 S.E.2d 588 (Va. 1954)). However, the facts of *Daniczek* differ materially from the facts at issue here. In *Daniczek*, the defendant attorney entered a courtroom during a hearing to demand that Daniczek, also an attorney, return a book to him. *Id.* at 744. The defendant attorney accused Daniczek of larceny: taking the book from his office. *Id.* This demand took place during a hearing in open court before the presiding judge and Daniczek's client. *Id.*

Similarly, Frances may maintain her defamation *per se* claim based on Baxter's second statement: "Baxter told Whittington that she was taking Fran[ces] to jail." (Compl. ¶ 34.) As with statement 1, Baxter's second statement plausibly suggests that Frances committed a crime for which Baxter arrested Frances. First, this statement meets the publication requirement because Frances claims Baxter said this before several people, including at least Whittington and Costello.[59] *See Jordan*, 612 S.E.2d at 206.

Second, Baxter's statement 2 also constitutes an actionable statement for the same reasons that statement 1 does so. *See id.* Viewed favorably, Frances plausibly alleges that she did not commit a crime in Baxter's presence. Especially because she concomitantly asserts that video footage could prove her correct and statements by Whittington show that the video footage exists, she plausibly satisfies the requirement of presenting an actionable statement. The generous reading of *Daniczek* undertaken by the Court at this procedural stage permits an inference of defamatory meaning. 156 F. Supp. 3d at 754.

Finally, as with statement 1, Frances plausibly alleges that Baxter lacked a "reasonable ground for" arresting her. When viewing the allegations favorably, Frances plausibly alleges the requisite intent. *See Sepmoree*, 2014 WL 4444435 at *7. The Court will thus allow Frances's defamation *per se* claim in Count IV to proceed against Baxter based on Baxter's first and second statements.

### 2. Frances May Also Maintain Her Defamation Claim Against Baxter Based on Statement 3

Statement 3 also survives the motion to dismiss Count IV. Under Virginia law, a person may be liable for defamation based on the statements of a third person if the defamatory

---

[59] Given the surrounding allegations, the Court draws the reasonable inference that other individuals, such as Pierre, other event attendees, and passersby heard the statement.

statements of that person amount to "the natural and probable result of what the [original] wrongdoer did." *Dragulescu*, 223 F. Supp. 3d at 509 (quoting *Weaver v. Beneficial Fin. Co.*, 98 S.E.2d 687 (Va. 1957)) (brackets in original). Where words constitute defamation *per se* their "repetition by others is the natural and probable result of the" original defamation. *Weaver*, 98 S.E.2d at 690 (quoting NEWELL, SLANDER AND LIBEL § 303, p. 339 (4th Ed.)).

In statement 3, Plaintiffs claim that Koehane "republished false and defamatory statements of and concerning Fran[ces] that he . . . had heard from Baxter and Whittington." (Compl. ¶ 49.) These statements include: "[s]he [Frances] was very loud, very aggressive and belligerent to the officers. They gave her several opportunities to leave the area and to calm down and that just didn't happen. If she just listened to the Officers, the arrest would have never occurred." (*Id.* (quoting Keohane).). These statements plausibly allege defamation *per se* for purposes of the motion to dismiss.

First, Baxter allegedly made these statements to Keohane and Keohane said these statements to WTVR, which later published these statements, satisfying the first prong of the defamation analysis. *Jordan*, 612 S.E.2d at 206. Second, Frances's assertion that she acted calmly and compliantly, alongside the parties' suggestion that video evidence could prove the truth or falsity of the claim, suffice to meet the requirement that the statement plausibly constitutes an untrue statement. *See Cook, Heyward, Lee, Hopper, & Feehan, P.C.*, 2012 WL 1898616 at *3. Under *Daniczek*, as applied to this preliminary record, these statements may also contain a defamatory meaning because they may amount to defamation *per se*. 156 F. Supp. 3d at 754. Third, as with statement 1 and 2, based on the favorable reading of the Complaint afforded to Plaintiffs when deciding the Officer Defendants' Motion to Dismiss, the Court will infer the requisite intent. *See Jordan*, 612 S.E.2d at 206. Finally, Keohane's reference to

Baxter's plausibly defamatory statement on WTVR becomes "the natural and probable result of" Baxter's original defamation *per se*. *See Weaver*, 98 S.E.2d at 690 (finding that where words constitute defamation *per se* their "repetition by others is the natural and probable result of the" original defamation (quoting NEWELL, SLANDER AND LIBEL § 303, p. 339 (4th Ed.)). For these reasons, statement 3 also survives the motion to dismiss Count IV against Baxter at this early stage.[60]

### 3. Statements 4, 5, 6, and 7 Do Not Constitute Defamatory Statements

The remainder of Baxter's statements do not support Frances's defamation claims under Virginia law. Frances cannot maintain a claim of defamation as to statements 4, 5, 6, and 7 because each one fails to satisfy the second prong of the defamation analysis: an actionable statement. *Jordan*, 612 S.E.2d at 206.

Statements 4, 5, and 6 each fail for the same reason: each statement fails to carry the requisite sting to Frances's reputation. "Such language is of the kind that 'tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Dragulescu*, 223 F. Supp. 3d at 507 (quoting *Schaecher*, 772 S.E.2d at 589). Without the requisite sting, none of these statements constitute a defamatory statement. *See Dragulescu*, 223 F. Supp. 3d at 507.

---

[60] Frances claims that Keohane heard these statements from "Baxter and Whittington." (Compl. ¶ 49.) For the same reasons that she may maintain her defamation *per se* claim against Baxter based on Keohane's statements, she may also pursue this claim against Whittington based on these statements.

Statement 7[61] similarly does not amount to defamation. In *Eaton v. Paramount Parks, Inc.*, the Fourth Circuit found that a plaintiff cannot maintain an insulting words[62] claim based on the officer's explanation of why she or he is detaining the person. 141 F.3d 1158, at *2 (4th Cir. 1998) (table opinion). Here, statement 3 serves as Baxter's explanation for Frances's detention, meaning it is not defamatory. *See id.*

### 4. Absolute Privilege Protects Baxter's Statement 8

Finally, absolute privilege protects Baxter from liability for defamation as to statement 8 because it represents Baxter's testimony at Frances's trial.[63] *See Doe*, 295 F. Supp. 3d at 674 ("In Virginia, it is well-settled that a testifying witness enjoys absolute immunity for any defamatory statements made during a judicial proceeding, provided those statements are relevant to the subject matter of the proceeding."). Given the favorable reading afforded to Plaintiffs' Complaint when deciding a motion to dismiss, the Court will allow Frances to pursue her defamation *per se* claim in Count IV against Baxter based on statements 1, 2, and 3 only.

### B. Frances Pleads a Claim of Defamation *Per Se* Against Whittington As to Four of Whittington's Statements

Frances also brings a defamation *per se* claim against Whittington. As with her claims against Baxter, Plaintiffs fail to clearly articulate the statements that form the basis of Frances's

---

[61] In statement 7, Baxter stated aloud that she arrested Frances for "disorderly conduct in a public place." (Compl. ¶ 27.)

[62] Courts have held that the cause of action for insulting words under Virginia law is "virtually co-extensive with the common law action for defamation." *Goulmamine M.D. v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 668–69 (E.D. Va. 2015). Because these two causes of action are "virtually co-extensive," *id.*, Frances cannot maintain her cause of action for defamation based on Baxter's explanation for Frances's detention.
For this same reason, Frances also cannot maintain her insulting words cause of action in Count V against Baxter based on this statement.

[63] During her testimony, Baxter stated that Frances did not use curse words during the exchange between Frances and Baxter and that "Kyles was, in fact, lying to the Court." (Compl. ¶ 60.)

claims. Assuming Plaintiffs intended to base their defamation *per se* claim on all of these statements, Plaintiffs plead minimally sufficient facts to maintain this claim based only on statements 1, 2, 3, and 4 as identified below. The six instances in which Whittington made statements about Frances include:[64]

(1)  "Whittington told Pierre that Fran[ces] was still handcuffed because she was 'still under arrest.'" (Compl. ¶ 41 (quoting Whittington).)

(2)  "Whittington told Pierre with a smile that Fran[ces] was going to be released on a summons and that she and Pierre would be able to attend their 9-year old's pre-performance." (*Id.* ¶ 42.)

(3)  "Whittington made the following false and defamatory statements to the *Progress-Index* reporter: 'Hopewell Police Capt. Mike Whittington said that he understood that [Frances] had "started getting disorderly with the officers" and yelling while they were engaged in closing off restricted areas. However, he noted that he had not personally witnessed the incident and that officers would have to review the body camera footage of the incident.'" (*Id.* ¶ 45 (quoting the *Progress-Index*).)

(4)  "Keohane republished false and defamatory statements of and concerning Fran[ces] that he . . . had heard from Baxter and Whittington, including: 'She [Fran[ces]] was very loud, very aggressive and belligerent to the officers. They gave her several opportunities to leave the area and to calm down and that just didn't happen. If she just listened to the Officers, the arrest would have never occurred."[65] (*Id.* ¶ 49.)

---

[64] In support of the Officer Defendants' Motion to Dismiss, the Officer Defendants also point to Plaintiffs' claim that "Whittington asked Pierre 'to wait a minute because he needed to record Pierre's threat.'" (Mem. Supp. Officer Defs.' Mot. Dismiss 15 (quoting Compl. ¶ 42).) In the Complaint, Plaintiffs specify that after Pierre confronted Whittington concerning possible legal action pertaining to Frances's arrest, "Whittington became highly disrespectful, took a step back and nervously tried to activate his 'bodycam,' asking Pierre to wait a minute because he needed to record Pierre's threat." (Compl. ¶ 42.) Because this statement does not reference or concern Frances, Frances cannot maintain her claim of defamation against Whittington based on this statement. *Schaecher*, 772 S.E.2d at 598 (finding that the plaintiff could not maintain her defamation cause of action where the allegedly defamatory statement was "not 'of and concerning'" either plaintiff (citing *Gazette, Inc.*, 325 S.E.2d at 738)).

[65] The Court previously decided, *supra* note 60, that Frances may pursue her defamation *per se* claim against Whittington based on statement 4.

(5)     "Whittington told Fran[ces] that he did not have to tell her anything and that she would be informed in Court about these details." (*Id.* ¶ 43.)

(6)     "Whittington told Baxter to take Fran[ces] [to] the principal's office. . . . Whittington ordered Redavid to take Fran[ces] to the office." (*Id.* ¶ 34.)

### 1. Because Statements 1 and 2 Imply that Frances Committed A Crime, They Are Deemed *Per Se* Defamatory At This Stage

For the same reasons that parts of Count IV survive the motion to dismiss as to statements by Baxter, Frances may pursue her defamation *per se* claim in Count IV against Whittington as to statements 1 and 2. In statement 1, Whittington "told Pierre that Fran[ces] was still handcuffed because she was 'still under arrest.'" (*Id.* ¶ 41 (quoting Whittington).) In statement 2, Whittington told Pierre that "Fran[ces] was going to be released on a summons." (*Id.* ¶ 42.) Both of these statements could be interpreted as meaning that Frances committed a crime.

First, Whittington published both his first and second statements to Pierre, "a third party in a nonprivileged context." *McCray*, 2017 WL 4111958 at *3. Second, Frances plausibly alleges that Whittington's first and second statements constitute actionable statements for the same reasons that Baxter's first and second statements do so: because Frances plausibly alleges that they represent untrue statements that impugn her reputation as an attorney.[66] *See Cook, Heyward, Lee, Hopper, & Feehan, P.C.*, 2012 WL 1898616 at *3; *Daniczek*, 156 F. Supp. 3d at 754. Finally, Plaintiffs sufficiently aver that Whittington made statements 1 and 2 with the requisite intent. *See Jordan*, 612 S.E.2d at 206; *Sepmoree*, 2014 WL 4444435 at *7. Even

---

[66] Specifically, at this early stage, based on the allegations in the Complaint, these statements may represent untrue statements because Frances's assertion that she acted calmly and compliantly, alongside the parties' suggestion that video evidence could prove the truth or falsity of the claim suffice to meet the requirement that the statement plausibly constitutes an untrue statement. *See Cook, Heyward, Lee, Hopper, & Feehan, P.C.*, 2012 WL 1898616 at *3. Based on the *Daniczek* court's statement, Whittington's first and second statements may also carry a defamatory meaning, 156 F. Supp. 3d at 754, thus plausibly meeting the requirements of an actionable statement, *see Jordan*, 612 S.E.2d at 206.

assuming Whittington genuinely believed that Baxter properly arrested Frances, Whittington—as Baxter's supervisor and a fellow member of the Hopewell PD—at least negligently failed to ascertain the lawfulness of Frances's arrest when speaking with Baxter. *Sepmoree*, 2014 WL 4444435, at *7 (finding that a private individual may show the required intent to allege defamation by showing that the speaker "acted negligently in failing to ascertain the facts on which the publication was based").

Because Frances has alleged sufficient facts, when read favorably, to show that Whittington's statements 1 and 2 may meet the requirements necessary to establish defamation *per se*, Frances may pursue her defamation *per se* cause of action against Whittington in Count IV.

### 2. Because Statement 3 Is Not an Opinion, Frances May Also Base Her Defamation Claim Against Whittington On This Statement

For a different reason, Frances may also pursue her defamation *per se* claim against Whittington based on Whittington's statement 3. In statement 3, Whittington told the *Progress-Index* that "he understood that [Frances] had 'started getting disorderly with the officers.'"[67] (Compl. ¶ 45 (quoting the *Progress-Index*).) Whittington argues that only this statement constitutes an opinion, meaning it cannot be actionable.[68] Baxter did not claim that any of her statements were opinions. For purposes of the instant motion, the Court finds that statement 3

---

[67] The full text of Whittington's statement 3 is that "'he understood that [Frances] had 'started getting disorderly with the officers' and yelling while they were engaged in closing off restricted areas. However, he noted that he had not personally witnessed the incident and that officers would have to review the body camera footage of the incident.'" (Compl. ¶ 45 (quoting the *Progress-Index*).)

[68] Whittington did not claim that any other statement he made was unactionable as an opinion. Whittington also does not challenge publication, the first prong. As to the third prong, requisite intent, Plaintiffs sufficiently satisfy this factor for the reasons above: Whittington may have negligently failed to ascertain the lawfulness of the arrest. *Sepmoree*, 2014 WL 4444435 at *7.

does not constitute Whittington's opinion, meaning Frances may pursue her defamation *per se* claim relying on this statement.

"Pure expressions of opinion . . . cannot form the basis of an action for defamation." *Chaves v. Johnson*, 335 S.E.2d 97, 101 (Va. 1985). Such statements include "speech which does not contain a provably false factual connotation, or . . . which cannot reasonably be interpreted as stating actual facts about a person." *Besen v. Parents & Friends of Ex-Gays, Inc.*, No. 3:12cv204, 2012 WL 1440183, at *3 (E.D.Va. Apr. 25, 2012) (alteration in original) (quoting *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 137 n.1 (Va. 1998)); *see also Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 823 (E.D. Va. 2013). Nonetheless, "[d]efendants can be held liable for defamation 'when a negative characterization is coupled with a clear but false implication that the [speaker] is privy to facts about the person that are unknown to the general [listener].'" *Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc.*, No. 7:09cv00472, 2011 WL 1327396, at *11 (W.D. Va. Apr. 6, 2011) (quoting Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 4:3.2 (4th ed. 2010)). "The test for determining whether facts that may be actionable defamation have been implied is 'whether a reasonable listener would take [the speaker] to be basing [her or] his 'opinion' on knowledge of facts of the sort than can be evaluated in a defamation suit.'" *Id.* (quoting Sack, *supra* § 4:3.2).

Whittington's statement that Frances acted "disorderly with the officers" can be proven true or false. *See Harrell*, 923 F. Supp. 2d at 823. In his statement, Whittington told the *Progress-Index* that "he had not personally witnessed the incident and that officers would have to review the body camera footage of the incident." (Compl. ¶ 45 (quoting the *Progress-Index* article).) Although Whittington attempts to assert that he does not yet have "facts about [Frances] . . . that are unknown to the general [listener]," he also appears "to be basing his

41

'opinion' on knowledge of facts of the sort that can be evaluated in a defamation suit." *See Baylor*, 2011 WL 1327395 at *11. Because video evidence may prove statement 3 true or false, and because statement 3 implies that Frances committed a crime, the Court will treat statement 3 as defamatory *per se* for purposes of this motion.[69] Having plausibly satisfied all three prongs of the analysis, Frances's claim of defamation *per se* against Whittington in Count IV may proceed based on statement 3 at this stage.

### 3. Frances Does Not Allege Sufficient Facts to Show that Whittington Published Statement 5, Thereby Failing the First Prong of the Defamation Analysis

The remainder of Whittington's statements do not, however, support a defamation claim that survive the motion to dismiss. Frances cannot maintain her defamation *per se* claim against Whittington based on Whittington's statement 5 because she has not shown that Whittington published the statement to any "third party in a nonprivileged context," failing the first prong of the defamation analysis. *Jordan*, 612 S.E.2d at 206; *McCray*, 2017 WL 4111958 at *3. In statement 5, Whittington "told Fran[ces] that he did not have to tell her anything and that she would be informed in Court about these details." (Compl. ¶ 43.) Plaintiffs do not allege that anyone overheard this statement.[70] Accordingly, Frances cannot support her defamation *per se* claim with this statement.

---

[69] The Court assumes, as it must, that this statement represents a false statement. *McCray*, 2017 WL 4111958 at *3 ("At the Motion to Dismiss stage, the Court must accept as false any statements which the Complaint alleges to be false.").

[70] The Court could infer that Baxter overheard this statement because Whittington left the principal's office with Baxter and Frances. Even if Baxter heard this statement, qualified privilege would protect this statement, meaning that Frances would still fail to plead sufficient facts to establish publication.

Under Virginia law, qualified privilege "attaches to '[c]ommunications between persons on a subject in which the persons have an interest or duty.'" *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) (brackets in original) (quoting *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va.

### 4. Because Statement 6 Is Not a Defamatory Statement, Frances Cannot Base Her Defamation Claim Against Whittington On This Statement

Similarly, Frances cannot pursue her defamation *per se* claim by relying on Whittington's sixth statement. In statement 6, Whittington "told Baxter to take Fran[ces to] the principal's office." (Compl. ¶ 34.) Frances cannot maintain her defamation claim on this statement because it fails the second prong of the defamation analysis: an actionable statement. *Jordan*, 612 S.E.2d at 206. Nothing about this statement makes Frances appear "infamous, odious, or ridiculous." *See Dragulescu*, 223 F. Supp. 3d at 507. Accordingly, Frances cannot claim defamation based on statement 6. *See id.*

Allowing Frances to pursue any aspect of her defamation *per se* claim against Whittington, as with Baxter, is a close call. Given the favorable reading afforded to Plaintiffs' Complaint on a motion to dismiss, Frances may pursue her defamation claim against Whittington based on statements 1, 2, 3, and 4 only.

---

2000)). A plaintiff can overcome a claim of qualified privilege by showing evidence of common-law malice by clear and convincing. *Doe*, 295 F. Supp. 3d at 676–77; *Goulmamine*, 138 F. Supp. 3d at 664–65. "Malice sufficient to overcome a qualified privilege is 'behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.'" *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 863 (Va. 2003) (quoting *Gazette*, 325 S.E.2d at 727).

Here, Baxter and Whittington, both members of the Hopewell PD and both involved in Frances's arrest at the time Whittington made this statement, had an interest in Frances's arrest, meeting the requirement to apply qualified privilege to this statement. Frances does not allege any facts to establish that Whittington made this statement with the malice necessary to overcome application of qualified privilege under this context. Because qualified privilege would apply to this statement even if Baxter overheard Whittington say this to Frances, Frances failed to meet the publication prong of the defamation analysis. *See McCray*, 2017 WL 4111958 at *3 (finding that publication requires "dissemination of the statement to a third party in a nonprivileged context.").

**C.    Pierre Fails to Allege Any Statements Made by Costello, Meaning He Cannot Allege Defamation Against Costello**

The Court now turns to Pierre's defamation *per se* claims against Costello in Count VII, which it will dismiss. In articulating the basis for Count VII, Plaintiffs state that Costello's statements "are detailed verbatim above," (Compl. ¶ 117), but the Complaint is devoid of any non-privileged[71] statements Costello made. Because Plaintiffs plead only the conclusory assertion that "Costello['s] . . . false statements constitute defamation *per se*," (Compl. ¶ 118), Pierre has failed to support his claim of defamation against Costello, *see Iqbal*, 556 U.S. at 678–79.

**D.    Frances Fails to Plead a Claim for Defamation *Per Se* Against Kyles Because Kyles's Statements Do Not Carry the Requisite Sting to Qualify as Defamatory**

In Count VII, Frances claims that Kyles defamed her and that his statements constitute defamation *per se*. Because Kyles's statements constitute unactionable opinions, which fail the second prong of the defamation analysis, Frances cannot maintain this claim.[72]

To support Frances's defamation *per se* claim against Kyles, Plaintiffs allege that "Kyles falsely stated to WTVR that on March 25, 2017 Fran[ces] was 'belligerent' and 'used profanity.'"[73] (Compl. ¶ 50.) In reply, Kyles claims that his statements to WTVR constitute

---

[71] Plaintiffs claim that, based on Kyles's complaint to the Hopewell PD, Costello sought and obtained a warrant from a magistrate for Pierre's arrest. The Officer Defendants state, and Plaintiffs agree, that these statements amount to privileged statements, upon which Pierre cannot maintain his defamation claim against Costello.

[72] Plaintiffs also summarize Kyles's testimony during Frances's trial in Hopewell General District Court. As discussed above in the context of Baxter's testimony, *supra* Part VII.B.4, absolute privilege protects Kyles from liability under Frances's defamation claims because he made these statements made while testifying at Frances's trial. *Doe*, 295 F. Supp. 3d at 674.

[73] Frances looks to this Court's decision in *Reynolds v. Pionear, LLC*, No. 3:15cv209, 2016 WL 1248866 (E.D. Va. 2016), to establish that Kyles's statement that Frances "used

opinions, and, that even if his statements were untruthful, they would lack the requisite sting to be defamatory.

Even assuming, without deciding, that Kyles's statements that Frances "used profanity" and was "belligerent" are not opinions, the Court finds that these statements lack the requisite sting to satisfy the second prong of a defamation analysis. These statements do not "tend[] to injure one's reputation in the common estimation of mankind," nor were they "calculated to render [Frances] infamous, odious, or ridiculous." *Dragulescu*, 223 F. Supp. 3d at 507 (quoting *Schaecher*, 772 S.E.2d 589). Plaintiffs allege no facts to support a claim that Kyles's statement affected Frances's reputation in the community and do not respond to Kyles's argument that this statement lacked the requisite sting. Even considering the allegations in the Complaint favorably toward the Plaintiffs, Frances cannot maintain her defamation *per se* claim in Count VII against Kyles.

## VIII. Analysis: Insulting Words[74]

Plaintiffs bring two claims of insulting words. Both of these claims fail. In Count V, Frances claims that Baxter and Whittington stated insulting words about her. Although Frances pleads minimally sufficient facts to maintain her defamation *per se* claim against both Baxter and Whittington, she fails to meet the distinct elements necessary to maintain her insulting words

---

profanity," (Compl. ¶ 50), represents a defamatory statement. In *Reynolds*, this Court did not consider whether the statement "with profanity" carried the requisite sting to constitute a defamatory statement because Pionear raised it for the first time in its reply to the motion to dismiss. *Id.* at *7 n.15. Kyles, however, properly raised this issue in the Kyles's Motion to Dismiss, and the Court will dismiss Frances's defamation *per se* claim in Count VII against Kyles on this ground.

[74] Although the Virginia insulting words cause of action has been interpreted as "virtually coextensive with the common law action for defamation," *Goulmamine*, 138 F. Supp. 3d at 670, the insulting words claim contains its own elements. For this reason, the Court addresses it separately from Plaintiffs' defamation claims.

45

claim against either defendant. In Count VIII, Pierre brings a claim of insulting words against Costello and Kyles. Similar to his defamation *per se* claims, Pierre's insulting words claims fail.

Section 8.01-45 of the Virginia Code provides: "All words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." VA. CODE ANN. § 8.01-45. To state a proper claim for insulting words, "a plaintiff must plead words that (1) would be construed as insults and (2) tend to violence and breach of the peace."[75] *Goulmamine*, 138 F. Supp. 3d at 668–69. In *Goulmamine*, a sister court in the Eastern District of Virginia concluded that "insulting words claims must state the insulting language *in haec verba* in federal as well as state court." *Id.* at 670 (relying on *Thompson*, 2000 WL 329237 at *4; *McGuire v. IBM Corp.*, No. 1:11cv528, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011)).

As to Baxter, only three of the eight statements Plaintiffs attribute to her express the exact words Baxter spoke, a requirement to properly plead a claim for insulting words. *Goulmamine*, 138 F. Supp. 3d at 670. Considering only those three remaining statements,[76] none of them constitute either defamation or insulting words.[77]

---

[75] The second requirement of the test "is sometimes elaborated as 'presents a clear and present danger of a violent physical reaction.'" *Goulmamine*, 138 F. Supp. 3d at 668 n.7 (quoting *Thompson v. Town of Front Royal*, No. 5:98cv83, 2000 WL 329237, at *4 (W.D. Va. Mar. 16, 2000)).

[76] Even were the Court to consider the other statements Baxter made, the Court would likely find that they do not properly plead a claim for insulting words.

[77] In statement 4, Baxter told Frances that "it was not her 'job to escort children.'" (Compl. ¶ 19 (quoting without attribution, presumably Baxter).) In statement 5, Baxter said "no" to Whittington. (*Id.* ¶ 34 (quoting Baxter).) Finally, in statement 7, Baxter "stated to Fran[ces] publicly and in front of many people that Fran[ces] was being arrested for 'disorderly conduct in a public place.'" (*Id.* ¶ 27 (quoting without attribution, presumably Baxter).)

No reasonable jury could find that statements 4 or 5 personally insult Frances, thus these statements fail the second prong of the insulting words test.[78] *See Goulmamine*, 138 F. Supp. 3d at 668. Under Fourth Circuit precedent, statement 7, Baxter's explanation of why she detained Frances, also fails the second prong of the insulting words test.[79] *Eaton*, 141 F.3d 1158, at * 2. Because Frances has not alleged any statement made by Baxter that could support her insulting words claim, the Court will dismiss Count V of the Complaint as to Baxter.

Frances also brings an insulting words claim against Whittington. Neither of Whittington's two statements that include his exact words[80] "tend to violence or breach of the peace." *See* VA. CODE ANN. § 8.01-45; *Goulmamine*, 138 F. Supp. 3d at 668–69. Neither statement "present[s] danger of a violent physical reaction." *Goulmamine*, 138 F. Supp. 3d at 668 n.7. Because these two statements represent the only *in haec verba* statements set forth in the Complaint and both fail to support Frances's insulting words claim against Whittington, the Court will dismiss Count V against Whittington as well.

Finally, Pierre cannot maintain his claim of insulting words against Costello and Kyles in Count VIII. Absent privileged testimony, Pierre does not allege any statements Costello or

---

[78] A jury must determine whether the words are insulting as a question of fact, "but a court may find as a matter of law that no reasonable jury could find the words insulting." *Goulmamine*, 138 F. Supp. 3d at 668–69. In so determining, a court should consider the manner in which the speaker delivered the words. *Id.* at 669 n.8.

[79] This is the same reason that statement 7 failed to support Frances's defamation *per se* claim against Baxter.

[80] In statement 1, Whittington told Pierre "that Fran[ces] was still handcuffed because she was 'still under arrest.'" (Compl. ¶ 41 (quoting Whittington).) In statement 3, Whittington told the *Progress-Index* that "he understood that Belisle had 'started getting disorderly with the officers' and yelling while they were engaged in closing off restricted areas. However, he noted that he had not personally witnessed the incident and that officers would have to review the body camera footage of the incident.'" (*Id.* ¶ 45 (quoting the *Progress-Index*).).

Kyles made *in haec verba*, meaning both of these claims fail. *See Goulmamine*, 138 F. Supp. 3d at 670. Thus, the Court will grant the Motion to Dismiss as to Count VIII of the Complaint.

## IX.  Conclusion

For the reasons stated above, the Court granted the Kyles's Motion to Dismiss in full. The Court also directed the Clerk to correct Defendant Angela Baxter's name to reflect her true name, Laura Baxter.  Regarding the Officer Defendants' Motion to Dismiss, the Court:

(1)     Denied as to Count I regarding Frances's § 1983 claim against Baxter;

(2)     Granted as to Count I regarding Frances's § 1983 claim against Whittington and dismissed Count I against Whittington;

(3)     Denied as to Count II regarding Frances's Virginia malicious prosecution claim against Baxter;

(4)     Granted as to Count II regarding Frances's Virginia malicious prosecution claim against Whittington and dismissed Count II against Whittington;

(5)     Denied as to Count III regarding Frances's false imprisonment claim against Baxter;

(6)     Granted as to Count III regarding Frances's false imprisonment claim against Whittington and dismissed Count III against Whittington;

(7)     Denied as Count IV regarding Frances's defamation *per se* claim against both Baxter and Whittington;

(8)     Granted as to Count V regarding Frances's insulting words claim against both Baxter and Whittington and dismissed Count V against Baxter and Whittington;

(9)     Granted as to Count VI regarding Pierre's Virginia malicious prosecution claim against Costello and dismissed Count VI against Costello;

(10)    Granted as to Count VII regarding Frances and Pierre's defamation *per se* claims against Costello and dismissed Count VII against Costello; and,

(11)    Granted as to Count VIII regarding Pierre's insulting words claim against Costello and dismissed Count VIII against Costello.

Because the Court dismissed all claims pending against Costello and Kyles, the Court dismissed them from this litigation. The Court also dismissed Pierre from this litigation because it dismissed each of his claims.

Four of Frances's claims may proceed against Baxter: § 1983 malicious prosecution (Count I), Virginia malicious prosecution (Count II), false imprisonment (Count III), and defamation *per se* (Count IV). One of Frances's claims may proceed against Whittington: defamation *per se* (Count IV). (*See* Mar. 31, 2019 Order, ECF No. 18.)

/s/
M. Hannah Lauck
United States District Judge

Date: 5/16/2019
Richmond, Virginia